EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ismael Lugo Ortiz<br><br>    Demandante-Recurrido<br><br>v.<br><br>Municipio de Guayama<br><br>    Demandado-Peticionario | Certiorari<br><br>2004 TSPR 166<br><br>162 DPR \_\_\_\_ |

Número del Caso: CC-2003-431

Fecha: 29 de octubre de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional VI

Juez Ponente:

Hon. Carmen A. Pesante Martínez

Abogado de la Parte Peticionaria:

Lcdo. José M. Colón Pérez

Abogado de la Parte Recurrida:

Lcdo. Roberto J. Torres Antommattei

Materia: Incumplimiento de Contrato, Cobro de Dinero y Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ismael Lugo Ortiz

    Demandante-Recurrido

        vs.                     CC-2003-431      CERTIORARI

Municipio de Guayama

    Demandado-Peticionario

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 29 de octubre de 2004

El señor Ismael Lugo Ortiz y el Municipio de Guayama, representado por su alcalde Héctor L. Colón Mendoza, suscribieron un contrato de servicios profesionales mediante el cual Lugo Ortiz se obligó a prestar servicios de consultoría con relación a la preparación de propuestas dirigidas a obtener recursos externos en beneficio del mencionado Municipio. Por su parte, el Municipio se obligó a pagarle a Lugo Ortiz el 10% del total de los fondos recaudados a través de las referidas propuestas.

El 15 de marzo de 1996, Lugo Ortiz preparó una propuesta dirigida al Departamento de Justicia

Federal, de conformidad con el "C.O.P.S. Universal Hiring Program".[1] La misma fue firmada por el señor Héctor L. Colón Mendoza, Alcalde del Municipio de Guayama, el señor Rubén Cruz Berríos, Comisionado de la Policía Municipal, y Lugo Ortiz, como consultor a cargo de la preparación de la propuesta.

A pocos meses de recibida la mencionada propuesta, el Departamento de Justicia Federal le notificó al Municipio de Guayama que en los documentos enviados faltaba una certificación titulada "Certification Regarding Lobbying, Debarment, Suspension, and Other Responsability Matters". Dicha certificación consistía en una forma pre-impresa uniforme donde debía incluirse el nombre y firma del Alcalde.[2] Alegadamente, el Municipio realizó varias gestiones con el objetivo de localizar e informar a Lugo Ortiz sobre el documento requerido. Al resultar dichas gestiones infructuosas, se recurrió al señor Alcides López Miranda --contable con el cual el Municipio mantenía una relación contractual-- persona que se encargó de obtener y

---

[1] Mediante dicha propuesta, se solicitaron fondos federales para cubrir el 75% de los salarios y beneficios marginales de 25 policías a ser reclutados por el Municipio.

[2] A excepción de dicho documento, la propuesta sometida estaba correcta y contenía la información necesaria para su tramitación.

enviar la certificación requerida al Departamento de Justicia Federal.[3]

El 29 de enero de 1998, el Departamento de Justicia Federal aprobó la propuesta sometida, asignándole al Municipio de Guayama la suma de $969,731. Lugo Ortiz se enteró de dicha aprobación a través de un comunicado de prensa emitido por la oficina del entonces Comisionado Residente Carlos Romero Barceló, por lo que le facturó al Municipio de Guayama el diez por ciento de los fondos obtenidos, según lo acordado en el contrato antes mencionado. Más adelante, Lugo Ortiz se enteró que el contrato de servicios profesionales suscrito con el Municipio nunca fue registrado ni remitido a la Oficina del Contralor de Puerto Rico, por lo que solicitó una reunión con el Director de Finanzas del Municipio, quien le confirmó dicha información.

Luego de múltiples requerimientos de pago, el 21 de abril de 1998, Lugo Ortiz presentó, ante el Tribunal de Primera Instancia, Sala Superior de Guayama, una demanda sobre incumplimiento de contrato, cobro de dinero y daños y perjuicios en contra del Municipio. En la misma reclamó la suma de noventa y seis mil novecientos setenta y tres dólares ($96,973), equivalente al diez por ciento del total recaudado, diez mil dólares ($10,000) en concepto de daños

---

[3] El señor López Miranda no devengó honorarios por los servicios prestados relacionados a la propuesta.

económicos y angustias mentales y una suma no menor de cinco mil dólares para cubrir las costas y honorarios de abogado. En su contestación a la demanda el Municipio alegó la nulidad de la relación jurídica entre las partes e incumplimiento de la obligación contraída. Más adelante, presentó una moción de sentencia sumaria, la cual fue denegada por el foro de instancia.

El juicio en sus méritos se celebró el 28 de agosto de 2001. Al culminar la presentación de la prueba de la parte demandante, el Municipio formuló moción de insuficiencia de la prueba (*non-suit*) bajo el fundamento de que el contrato aquí en controversia no fue registrado según lo exige la Ley de Municipios Autónomos en su Artículo 8.016, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4366.

El foro de instancia, luego de que los demandados presentaran su prueba, dictó sentencia declarando con lugar la demanda presentada por Lugo Ortiz. Al así resolver sostuvo que "[e]l mero hecho de no haberse registrado el contrato, por sí solo, no lo convierte en nulo" y que "[e]n tales casos la obligación del tribunal es mirar con cautela todos los hechos relevantes al otorgamiento, ejecución y cumplimiento con las obligaciones contenidas en el mismo."

Entendió dicho foro que el contrato aquí en cuestión cumplió sustancialmente con todos los requisitos de ley; que no está envuelto un pago o reclamación fraudulenta ni existen indicios de que se trate de un caso de favoritismo, corrupción, despilfarro o riesgos de incumplimiento.

Asimismo, concluyó que Lugo Ortiz "cumplió con todas sus obligaciones bajo el Contrato de Servicios Profesionales excepto por la radicación de la Certificación antes mencionada, lo cual hubiese hecho sin mayor dificultad de haber sido notificado de tal problema por el Municipio de Guayama."

Amparado en tales argumentos, y citando las doctrinas de actos propios y enriquecimiento injusto, el referido foro concluyó que en el caso de autos no se vulneró ningún principio importante de orden público por lo que el Municipio debía cumplir con su parte del acuerdo. Inconforme con la determinación del foro primario, el Municipio acudió ante el foro apelativo intermedio mediante recurso de apelación. En síntesis, alegó que el contrato de servicios suscrito entre las partes era ineficaz por razón de no haber sido registrado de acuerdo a la antes citada Ley.[4]

Mediante sentencia a esos efectos, el Tribunal de Apelaciones confirmó el dictamen recurrido. Al así resolver, expresó que el hecho de que el contrato aquí en controversia no haya sido registrado ni enviado a la Oficina del Contralor no acarrea, necesariamente, la nulidad del mismo. Entendió que el presente caso no versa

---

[4] Alegó, además, que al presentar una propuesta inadecuada e incompleta, el señor Lugo Ortiz incumplió con una de las obligaciones esenciales del contrato de servicios por lo que el Municipio podía resolver unilateralmente la obligación contraída.

sobre un uso ilegal o inapropiado de fondos públicos, pues, tratándose de una asignación de fondos federales, no se requiere "el desembolso de fondos municipales propiamente". Finalmente señaló que en este tipo de caso "se le debe requerir a ambas partes contratantes por igual que se registre el contrato" o, en la alternativa, que la parte que contrata con el municipio se cerciore de que el contrato haya sido registrado.

Aún inconforme, el Municipio de Guayama recurrió --vía *certiorari*-- ante este Tribunal, alegando que incidió el Tribunal de Apelaciones al:

> ... concluir, igual que el Tribunal de Instancia, que el demandante-apelado, cumplió con su obligación contractual de proveer asistencia técnica adecuada para la aprobación de la propuesta C.O.P.S. Universal Hiring Program, siendo ello un elemento esencial de su obligación contractual.

> ... resolver, (igual que el Tribunal de Instancia), que el contrato entre el Municipio de Guayama y el demandante-apelado, era eficaz, a pesar de no cumplirse con las disposiciones pertinentes de la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, según enmendada.

Examinada la petición de *certiorari*, así como sus anejos, le concedimos a la parte demandante-recurrida un término para mostrar causa por la cual este Tribunal no debía expedir el auto solicitado y dictar Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones. Contando con la comparecencia de

ambas partes, y estando en posición de resolver el recurso radicado, procedemos a así hacerlo.

I

En reiteradas ocasiones este Tribunal ha expresado que "[l]a buena administración de un gobierno es una virtud de democracia, y parte de su buena administración implica llevar a cabo sus funciones como comprador con eficacia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa." Ríos v. Mun. de Isabela, res. el 15 de julio de 2003, 2003 T.S.P.R. 122; Fernández & Gutiérrez v. Mun. de San Juan, 147 D.P.R. 824, 829 (1999); Hatton v. Mun. de Ponce, 134 D.P.R. 1001, 1005 (1994); Mar-Mol Co. Inc. v. Adm. de Sevicios Generales, 126 D.P.R. 864, 871 (1990). Sobre este particular, en Cancel v. Mun. de San Juan, 101 D.P.R. 296, 300 (1973), señalamos que "[l]as distintas disposiciones estatutarias [que] regul[an] la realización de obras y contratación de servicios para el Estado y sus agencias e instrumentalidades tienen por meta la protección de los intereses y dineros del pueblo contra el dispendio, la prevaricación, el favoritismo y los riesgos del incumplimiento."

Lo antes expuesto sirve de pauta para entender las razones por las cuales este Tribunal reiteradamente se ha expresado en favor de una normativa restrictiva en cuanto a los contratos suscritos entre entes privados y entidades

municipales. De este modo, "hemos resaltado la rigurosidad de los preceptos legales que rigen las relaciones comerciales entre entes privados y los municipios, que aspiran a promover una sana y recta administración pública, asunto que está revestido del más alto interés público." Fernández & Gutiérrez v. Mun. de San Juan, ante, a la pág. 829.

De particular pertinencia y relevancia al asunto hoy ante nuestra consideración lo es el Artículo 8.016 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4366, el cual establece que los municipios deberán "manten[er] un registro de todos los contratos que otorguen, incluyendo las enmiendas a los mismos[,] y enviarán copia de éstos y de las escrituras de adquisición y disposición de bienes a la Oficina del Contralor de Puerto Rico, conforme a las secs. 97 et seq. del Título 2 y su Reglamento."

Del mismo modo, y con sujeción a ciertas excepciones,[5] la Ley Núm. 18 de 30 de octubre de 1975, según enmendada,

---

[5] A tenor con lo dispuesto en la Ley, no será necesario el envío al Contralor de copia de los siguientes contratos:

(1) De servicios personales de naturaleza esporádica, por un término menor de seis (6) meses, no prorrogable, y un costo menor de dos mil (2,000) dólares.

(2) De servicios personales de naturaleza profesional por un término de un (1) año o menos, no prorrogable, y cuyos servicios no constituyan un puesto o empleo y su costo no exceda de cinco mil (5,000) dólares.

**(Continúa . . .)**

le impone a los municipios, departamentos, agencias, instrumentalidades, oficinas y todo otro organismo del Estado Libre Asociado de Puerto Rico, sin excepción alguna, la obligación de "mantener un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha del otorgamiento del contrato o la enmienda." 2 L.P.R.A. sec. 97.

En ocasión de interpretar la antes mencionada disposición estatutaria, en Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37, 53-54 (1988), este Tribunal estableció ciertos requisitos formales que deben ser observados rigurosamente siempre que se otorguen contratos municipales. Éstos son: (i) que el acuerdo se haya hecho constar por escrito; (ii) que se mantenga un registro fiel con miras a establecer la existencia del contrato; (iii) que se remita copia del mismo a la Oficina del Contralor; y

_____

(3) Para obras con un costo que no exceda de dos mil (2,000) dólares.

(4) Los que se otorguen mediante subasta pública con excepción de aquellas relacionadas con proyectos u obras de construcción.

(5) De servicios profesionales de médicos y profesionales de la salud otorgados por entidades gubernamentales, cuyo objetivo principal sea brindar servicios médicos.

(6) Cualquier otro tipo de contrato que el Contralor por reglamentación al efecto determine que no le sea enviado.

(iv) que se acredite la certeza de tiempo; esto es, que fue realizado y otorgado quince (15) días antes.

Por otra parte, en Fernández & Gutiérrez v. Mun. de San Juan, ante, a la pág. 833, tras reiterar los requisitos antes mencionados, expresamos que los mismos debían ser rigurosamente observados y que la ausencia de éstos privaba de eficacia y validez el acuerdo municipal en cuestión. Asimismo, señalamos que "[e]stos preceptos, de sana política administrativa pública, reflejan la intención legislativa de crear un mecanismo de cotejo y publicidad de los contratos otorgados por los municipios, que tiene carácter constitutivo con respecto a la eficacia de éstos." (énfasis suplido).

Sobre este mismo tema, en Ríos v. Mun. de Isabela, ante, este Tribunal aplicó la normativa antes discutida al concluir que la Asamblea Municipal de Isabela carecía de autoridad para darle eficacia a un contrato municipal que adolecía de nulidad por no haber sido formulado mediante un contrato escrito, no estar registrado en los libros del Municipio ni su copia enviada a la Oficina del Contralor.

A tono con lo anterior, en Las Marías Reference Laboratory Corp. v. Mun. de San Juan, res. el 15 de julio de 2003, 2003 T.S.P.R. 121, este Tribunal fue enfático al sostener que "ningún Municipio podrá satisfacer deuda alguna que emane de un acuerdo que no se haya registrado y remitido a la Oficina del Contralor." Al así resolver este Tribunal expresó que la inexigibilidad de los contratos

municipales no remitidos al Contralor responde al hecho de que los mismos no se consideran legalmente perfeccionados. En ese sentido fuimos claros al expresar que será nulo todo pacto realizado entre una parte privada y un municipio en que no se siga el trámite dispuesto por ley. Las Marías Reference Laboratory Corp. v. Mun. de San Juan, ante; véase, además: Hatton v. Mun. de Ponce, ante, a la pág. 1007.

En este mismo caso delineamos los criterios que debían ser observados en toda contratación municipal. A esos efectos señalamos:

> Primeramente, los municipios no deben exigir la ejecución de servicios sin haber certificado a la parte privada que el acuerdo se redujo a un contrato escrito, que se registró, y que se remitió copia del mismo a la Oficina del Contralor según lo dispone la ley. La referida certificación detallaría minuciosamente el trámite efectuado, especialmente lo pertinente a la remisión del contrato a la Oficina del Contralor, especificando, como mínimo, la fecha, hora y número de registro del mismo en esa oficina. Este proceder debe observarse incluso en casos de emergencia.

Asimismo enfatizamos en el hecho de que "las partes privadas deben ejercer un rol más activo al contratar con los municipios", "[t]oda vez que las entidades no gubernamentales que contratan con los municipios no están exentas del cumplimiento de la ley". Destacamos que sería prudente que éstas exijan de los municipios la referida certificación antes de realizar alguna prestación. De este modo, aquella parte privada que se cruce de brazos y preste servicios sin exigir prueba fehaciente de que el gobierno

cumplió con su deber, se arriesga a asumir la responsabilidad por sus pérdidas.

La norma jurisprudencial antes reseñada fue radicalmente afectada con la aprobación de la Ley Núm. 127 de 31 de mayo de 2004.[6] Según surge de la Exposición de Motivos de la referida disposición legal, el propósito perseguido por la Asamblea Legislativa al aprobar esta Ley fue establecer que el incumplimiento con lo establecido en la Ley Núm. 18 "no será causa para que un tribunal competente declare la nulidad del contrato o negocio jurídico en cuestión, pero sí será suficiente para que no se tenga que realizar el desembolso por el pago o la prestación contenida en dicho contrato hasta que se cumpla con los requisitos de este Artículo 1."

De este modo, y en lo aquí pertinente, se enmendó el Artículo 1 de la Ley Núm. 18 a los fines de añadir dos nuevos incisos, los cuales fueron denominados (d) y (e).[7] En los referidos incisos se dispuso lo siguiente:

---

[6] Esta Ley acogió la tesis expuesta en Municipio de Ponce v. Autoridad de Carreteras, res. el 29 de diciembre de 2000, 2000 T.S.P.R. 194 --y abandonada por este Tribunal en sus subsiguientes pronunciamientos-- a los efectos de que la consecuencia del incumplimiento de los requisitos de registro y remisión del contrato municipal no es la nulidad que establece el Art. 8.016 de la Ley de Municipios Autónomos, sino lo dispuesto en el Art. 8.004, el cual establece que "[n]o se autorizará desembolso alguno relacionado con contratos sin la constancia de haberse enviado el contrato a la Oficina del Contralor de Puerto Rico...." 21 L.P.R.A. sec. 4354.

[7] Además se añadió el inciso c (5) y se reenumeró el inciso anterior como c (6).

(d) El incumplimiento con lo dispuesto en el Artículo 1 de esta Ley o con la disposición equivalente relacionada a registros de contratos incluidos en el Artículo 8.016 de la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como "Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico" de por sí no será causa para que un Tribunal competente declare la nulidad de cualquier contrato o negocio jurídico legalmente válido. No obstante, ninguna prestación o contraprestación objeto de un contrato podrá exigirse hasta tanto se haya dado cumplimiento a lo dispuesto en el Artículo 1 de esta Ley. (énfasis suplido).

(e) En todo contrato sujeto a registro conforme el Artículo 1 de esta Ley se consignará en forma clara y conspicua un aviso que leerá como sigue: "Ninguna prestación o contraprestación objeto de este contrato podrá exigirse hasta tanto el mismo se haya presentado para registro en la Oficina del Contralor a tenor con lo dispuesto en la Ley Núm. 18 de 30 de octubre de 1975, según enmendada.

Asimismo, en el Artículo 2 de la citada Ley Núm. 127 se dispuso que la Ley comenzaría a regir inmediatamente luego de su aprobación y que sería de aplicación a todo contrato gubernamental o municipal otorgado en, o antes, de aprobada la misma.

Como vemos, las enmiendas antes mencionadas tienen el efecto de variar de forma radical la normativa desarrollada por este Tribunal en torno a los contratos municipales. Según se dispone expresamente en la referida Ley 127, a partir de la aprobación de la misma, los tribunales no podrán decretar la nulidad de un contrato municipal por el solo hecho de que éste no haya sido registrado ni remitido a la Oficina del Contralor. La única salvedad que se hace en estos casos es a los efectos de que los contratantes no

podrán exigir ninguna de las prestaciones o contraprestaciones objeto del contrato hasta tanto el mismo haya sido registrado y remitido al Contralor, tal y como exige el Artículo 8.016 de la Ley de Municipios Autónomos, ante, y la Ley Núm. 18 de 30 de octubre de 1975, según enmendada.

Es importante recalcar que las enmiendas antes discutidas no tienen el efecto de alterar la política pública establecida en nuestro ordenamiento jurídico a los efectos de que la buena administración de un gobierno conlleva el realizar sus funciones como comprador con la mayor eficacia a los fines de proteger los intereses y dineros del pueblo. Ello responde al gran interés del Estado en promover una sana y recta administración pública, previniendo el despilfarro, la corrupción y el amiguismo en la contratación gubernamental.[8]

En vista de lo anterior, recalcamos la importancia del registro y remisión a la Oficina del Contralor de los contratos municipales e instamos a las partes a dar cumplimiento inmediato a dichos requisitos a los fines de asegurar que este mecanismo de cotejo cumpla con su propósito principal: evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia, el

---

[8] Fernández & Gutiérrez v. Municipio de San Juan, ante, a la pág. pág. 829; Hatton v. Municipio de Ponce, ante, a la pág. 1006; Ocasio v. Alcalde de Maunabo, 121 D.P.R 37, 54 (1988); Morales v. Municipio de Toa Baja, 119 D.P.R. 682, 693 (1987).

descuido y los riesgos de incumplimiento en la administración pública.

## II

Como expresáramos anteriormente el contrato de servicios profesionales suscrito entre el señor Ismael Lugo Ortiz y el Municipio de Guayama no fue registrado ni remitido a la Oficina del Contralor, tal y como lo exige expresamente el Artículo 8.016 de la Ley de Municipios Autónomos y el Artículo 1 de la Ley Núm. 18 de 30 de octubre de 1975. Tal y como señaláramos anteriormente, previo a la aprobación de la Ley Núm. 127 de 31 de mayo de 2004, el no registrar o remitir copia de un contrato municipal a la Oficina del Contralor eran causas suficientes para que un tribunal decretara la nulidad del acuerdo pactado. Sin embargo, luego de aprobada la mencionada pieza legislativa, el incumplimiento con estos requisitos no tiene el efecto de anular el contrato en controversia, aunque impide que puedan exigirse las prestaciones pactadas hasta tanto el mismo haya sido registrado y remitido a la Oficina del Contralor.

En cuanto al planteamiento presentado por el Municipio de Guayama a los efectos de que Lugo Ortiz no cumplió con su obligación contractual de proveer asistencia técnica adecuada para la aprobación de la propuesta C.O.P.S. Universal Hiring Program, basta con señalar que el Municipio no ha demostrado ante nos que al emitir su

dictamen el juez de primera instancia hubiese incurrido en pasión, perjuicio o error manifiesto.

A esos efectos, debemos recordar la norma de deferencia que deben tener los foros apelativos en cuanto a las determinaciones de hecho y la apreciación de la prueba que realiza un tribunal de instancia. En ausencia de pasión, prejuicio, error manifiesto o parcialidad este Tribunal no intervendrá con las determinaciones de hecho y la apreciación de la prueba que realizan los foros de instancia. Trinidad García v. Chade, res. el 18 de enero de 2001, 2001 T.S.P.R. 7; Arguello López v. Arguello García, res. el 31 de agosto de 2001, 2001 T.S.P.R. 124.

En el caso de autos, el tribunal sentenciador, luego de evaluar la prueba desfilada, entendió que el señor Lugo Ortiz cumplió con su obligación contractual de proveer la asistencia técnica requerida por el Municipio. Asimismo, concluyó que las gestiones realizadas por el Municipio de Guayama, a los fines de informarle a Lugo Ortiz sobre el documento requerido por el Departamento de Justicia Federal, fueron insuficientes y que éste hubiese sometido el documento --sin mayor dificultad-- de haber sido notificado sobre la necesidad del mismo. No habiéndose demostrado que el tribunal sentenciador actuó con prejuicio, pasión o parcialidad o que cometió error manifiesto, no vemos razón alguna para intervenir con sus determinaciones.

III

En mérito de lo anteriormente expuesto, y aunque por fundamentos distintos, procede confirmar la sentencia emitida por el Tribunal de Apelaciones, confirmatoria la misma de la emitida por el Tribunal de Primera Instancia. En tal virtud, y considerando que el contrato aquí en controversia nunca fue registrado ni remitido a la Oficina del Contralor, procede ordenarle al Municipio de Guayama que cumpla con tales requisitos a los fines de que el Sr. Ismael Lugo Ortiz pueda exigir el pago pactado.

Se dictará Sentencia de conformidad.


                          FRANCISCO REBOLLO LÓPEZ
                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ismael Lugo Ortiz

    Demandante-Recurrido

       vs.                    CC-2003-431       CERTIORARI

Municipio de Guayama

    Demandado-Peticionario


SENTENCIA

San Juan, Puerto Rico, a 29 de octubre de 2004


     Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se dicta Sentencia confirmatoria, aunque por fundamentos distintos, de la emitida por el Tribunal de Apelaciones en el presente caso. Considerando que el contrato aquí en controversia nunca fue registrado ni remitido a la Oficina del Contralor, se ordena al Municipio de Guayama que cumpla con tales requisitos a los fines de que el Sr. Ismael Lugo Ortiz pueda exigir el pago pactado.

     Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri no intervino.


                       Patricia Otón Olivieri
                  Secretaria del Tribunal Supremo