La Juez Asociada Señora Rodríguez Rodríguez
emitió la opinión del Tribunal.
Corresponde determinar en esta ocasión si es válido y vinculante un acuerdo no escrito convenido entre un funcionario municipal y un contratista para prestar servicios al municipio, o si por el contrario, éste carece de toda eficacia por no haberse reducido a escrito. Resolvemos, a la luz de la discusión que procede, que dicho arreglo verbal no vinculó a las partes, precisamente por no haberse reducido a escrito y por ello ser de carácter constitutivo para la eficacia de las obligaciones contraídas.
I
El señor Félix Colón Colón (señor Colón) es dueño del “Garaje Colón Colón” localizado en el Municipio de Morovis, Puerto Rico. El Garaje se especializa en la reparación de maquinaria y equipo pesado con motores “diesel”. En el año 2000 el Sr. Edgardo Rivera (señor Rivera), Director de Obras Públicas del municipio de Arecibo (Municipio), le propuso al señor Colón que prestara a crédito servicios de reparación de equipo pesado “diesel” para los vehículos propiedad del Municipio.
El señor Colón aceptó verbalmente la oferta realizada por el funcionario municipal. Posteriormente, el Municipio comenzó a entregarle al señor Colón su maquinaria y equipo pesado. El señor Colón reparaba el equipo del Municipio financiando la adquisición de piezas y repuestos, luego lo devolvía a satisfacción del Municipio y éste procesaba el pago por los servicios prestados. Cabe señalar que el acuerdo verbal entre el señor Colón y el Director de Obras Públicas municipal nunca se redujo a un contrato escrito, por lo que tampoco se registró en la Oficina del Contralor de Puerto Rico.
En el 2002, el Municipio solicitó al señor Colón la devolución del equipo pendiente de reparación que éste tenía en *722 su taller y le informó que la relación contractual entre ambos no se había formalizado legalmente. El señor Colón no accedió a la solicitud del Municipio hasta tanto éste le pagara los servicios de reparación que había realizado. En respuesta a lo anterior, el Municipio presentó una demanda de injuction contra el señor Colón ante el Tribunal de Primera Instancia, Sala Superior de Arecibo, solicitando la devolución de su propiedad. Luego de varios incidentes procesales, el señor Colón acordó devolver el equipo del Municipio y hacer las gestiones judiciales y extrajudiciales pertinentes para el cobro de los servicios de reparación prestados y no pagados.
Así las cosas, el señor Colón, su esposa, señora Carmen M. Martínez Marrero, y la Sociedad de Gananciales compuesta por ambos, presentaron una demanda en cobro de dinero contra el Municipio, alegando que éste le adeudaba $220,974.15 en concepto de reparaciones al equipo pesado propiedad del Municipio y compra de piezas. El Municipio contestó el recurso negando las alegaciones. Adujo que la entrega y el recibo del equipo pesado municipal se realizó ilegalmente, ya que lo pactado no constaba en un contrato escrito. Más aún, alegó que el señor Colón no era un neófito en su negocio, por lo que sabía que los servicios que prestó no podían realizarse sin que existieran órdenes de compra y certificaciones que evidenciaran que existía una relación contractual legalmente formalizada entre las partes.
Luego de varios incidentes procesales, el Municipio solicitó que se dictara sentencia sumaria contra el señor Colón. Sostuvo que el alegado contrato entre el señor Colón y el Municipio era nulo, ya que no fue plasmado por escrito ni registrado en la Oficina del Contralor de Puerto Rico conforme a la Ley Núm. 18 de 30 de octubre de 1975, según enmendada (Ley Núm. 18), 2 L.P.R.A. see. 97, y la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como la Ley de Municipios Autónomos del Estado Li *723 bre Asociado de Puerto Rico de 1991 (Ley de Municipios Autónomos), 21 L.P.R.A. see. 4001 et seq.
El señor Colón se opuso oportunamente a la solicitud del Municipio, alegando que la Ley Núm. 18 fue enmendada por la Ley Núm. 127 de 31 de mayo de 2004 (Ley Núm. 127) con el propósito de establecer que el hecho de no registrar un contrato en la Oficina del Contralor de Puerto Rico no será causa para decretar su nulidad. En la alternativa, invocó la doctrina de enriquecimiento injusto para recobrar del Municipio lo adeudado.
El Tribunal de Primera Instancia dictó sentencia sumaria desestimando la demanda en cobro de dinero presentada por el señor Colón y su esposa. Dicho foro concluyó que no se había cumplido con la Ley Núm. 18. Inconformes, los demandantes apelaron la determinación anterior ante el Tribunal de Apelaciones alegando que el foro de instancia desestimó su demanda sin considerar los efectos de la Ley Núm. 127 sobre la Ley Núm. 18. Además, alegaron que no procedía desestimar el recurso mediante el mecanismo de sentencia sumaria, ya que existían controversias de hechos y de derecho.(1)
El tribunal apelativo revocó el dictamen del Tribunal de Primera Instancia. Concluyó que el hecho de que el contrato no constara por escrito ni que estuviese inscrito en la Oficina del Contralor de Puerto Rico, no viciaba de nulidad la relación contractual entre las partes, pues se trataba de un defecto subsanable. Fundamentó esta determinación en lo dispuesto en la Ley Núm. 127. Más aún, determinó que no procedía decretar sentencia sumaria porque existían controversias de hechos que tenían que dilucidarse en un juicio en su fondo. Razonó que el tribunal de instancia te *724 nía que recibir y aquilatar prueba para determinar si entre el señor Colón y el Municipio se formalizó o no un contrato de servicios. Entendió que era necesario determinar cuáles eran los términos del contrato, si alguno, para que se procediera entonces a transcribirlo y registrarlo conforme a derecho.
Oportunamente, el Municipio solicitó sin éxito la reconsideración de la determinación del tribunal apelativo. En desacuerdo, el Municipio acudió ante nosotros señalando la comisión de los errores siguientes:
Erró el Honorable Tribunal de Apelaciones al revocar la sentencia del tribunal de instancia en consideración a las disposiciones de la Ley Núm. 127, antes citada.
Erró el Honorable Tribunal de Apelaciones al concluir que, “el hecho que el contrato no conste por escrito ... per se no lo anula.”
Erró el Honorable Tribunal de Apelaciones al obviar la normativa de Fernández & Gutiérrez v. Municipio de San Juan, 147 D.P.R. 824 (1999) y crear una obligación jurídica del Municipio de Arecibo a base de la actuación de un funcionario municipal sin facultad para ello.
Erró el Honorable Tribunal de Apelaciones al concluir que existe controversia de hechos que impide resolver el caso de marras por la vía sumaria. Petición de certiorari, pág. 4.
Expedimos. Estando en posición de resolver, procedemos a hacerlo sin contar con el beneficio de la comparecencia de la parte recurrida.
II
Consecuentemente hemos reiterado que “la buena administración de un gobierno es una virtud de democracia, y parte de su buena administración implica llevar a cabo sus funciones como comprador con eficacia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa”. Lugo v. Municipio Guayama, 163 D.P.R. 208, 214 (2004), citando a Mar-Mol Co., Inc. v. Adm. Servicios Gens., 126 D.P.R. 864, *725 871 (1990). Véanse, además: Cordero Vélez v. Mun. de Guánica, 170 D.P.R. 237 (2007); Ríos v. Municipio Isabela, 159 D.P.R. 839 (2003). Los estatutos que regulan y ordenan la realización de obras y adquisición de bienes y servicios para el Estado, sus agencias y dependencias, y los municipios, tienen como propósito la protección de los intereses y recursos fiscales del Pueblo contra el dispendio, la prevaricación, el favoritismo y los riesgos del incumplimiento. Lugo v. Municipio Guayama, supra; Cancel v. Municipio de San Juan, 101 D.P.R. 296, 300 (1973).
La facultad de los municipios de desembolsar fondos públicos para el pago de las obligaciones que contraen está supeditada a que estas entidades públicas actúen acorde con los procedimientos establecidos por ley y nuestra jurisprudencia interpretativa. Conforme a lo anterior, reiteradamente nos hemos expresado a favor de una norma restrictiva en cuanto a los contratos suscritos entre entes privados y los municipios. Cordero Vélez v. Mun. Guánica, supra; Lugo v. Municipio Guayama, supra. Cabe señalar que cuando se trata de contratos municipales regidos especialmente por la Ley de Municipios Autónomos, la validez de éstos tiene que determinarse considerando las disposiciones pertinentes de este estatuto especial, y no a la luz de la teoría general de obligaciones y contratos del Código Civil. Cordero Vélez v. Mun. Guánica, supra; Mun. de Ponce v. A.C. et al., 153 D.P.R. 1 (2000).
En conformidad con la normativa anteriormente discutida, y considerando los estatutos que regulan la contratación municipal,(2) hemos establecido que para que los contratos otorgados por un municipio sean válidos y ten *726 gan por lo tanto efecto vinculante entre las partes, tienen que cumplirse varios requisitos formales y procesales. Así, en primer lugar, “es indispensable que el contrato conste por escrito para que lo convenido tenga efecto vinculante”. (Énfasis en el original.) Cordero Vélez v. Mun. de Guánica, supra, pág. 248. Véase Municipio Mayagüez v. Lebrón, 167 D.P.R. 713 (2006). Este requisito tiene que cumplirse sin excepción alguna para que lo acordado tenga validez entre las partes. Ríos v. Municipio Isabela, supra; Fernández & Gutiérrez v. Mun. San Juan, 147 D.P.R. 824, 830—833 (1999); Hatton v. Mun. de Ponce, 134 D.P.R. 1001 (1994).
El requisito de contrato escrito es de carácter formal o sustantivo. Constituye un mecanismo profiláctico tendiente a evitar pagos y reclamaciones fraudulentas e ilegales. El contrato escrito es la mejor evidencia de las obligaciones recíprocas que contraen las partes. Libra a las partes de futuras controversias espúreas sobre los términos acordados originalmente, pues éstos quedan plasma-dos de forma objetiva en el acuerdo escrito. Por lo tanto, este requerimiento protege los derechos tanto del municipio como del contratista, en caso de incumplimiento.
Adviértase, además, que previo a suscribir un contrato, el municipio tiene que haber identificado los fondos de donde se van a pagar los servicios o bienes que se adquieren. El contrato escrito es lo que permite determinar con certeza el monto del desembolso para, a su vez, identificar la partida correspondiente del presupuesto municipal contra la cual se van a hacer tales desembolsos. 21 L.P.R.A. sec. 4354(b). Véanse, además: Hatton v. Mun. de Ponce, supra; Morales v. Municipio de Toa Baja, 119 D.P.R. 682 (1987). En consecuencia, este requerimiento pruden *727 cial tiene una insoslayable dimensión sustantiva de sana administración pública. Necesariamente, entonces, la exigencia de que todo contrato municipal sea por escrito tiene un carácter constitutivo respecto a la eficacia de las obligaciones contraídas. Véase Principios Legales y de Sana Administración que Regulan la Contratación de Servicios Profesionales y Consultivos en el Sector Público, Oficina del Contralor, julio 2006.
Por otra parte, hemos reconocido que conforme al Art. 8.016 de la Ley de Municipios Autónomos, 21 L.P.R.A. see. 4366, y el Art. 1 de la Ley Núm. 18 (2 L.P.R.A. see. 97), los municipios deben mantener un registro fiel de los contratos que suscriben y remitir copia de éstos a la Oficina del Contralor de Puerto Rico dentro de los quince días siguientes a su otorgamiento. Cordero Vélez v. Mun. de Guánica, supra; Lugo v. Municipio Guyama, supra; Ríos v. Municipio Isabela, supra. Estos requisitos promueven una sana y transparente administración pública, ya que sirven como mecanismos de cotejo y publicidad de los contratos otorgados por los municipios.
En el pasado habíamos dispuesto que el incumplimiento con los requisitos de registro y de remisión al Contralor de un contrato municipal, viciaba de nulidad el contrato suscrito. Véanse, entre otros: Las Marías v. Municipio San Juan, 159 D.P.R. 868 (2003); Ríos v. Municipio Isabela, supra; Fernández & Gutierrez v. Mun. San Juan, supra, pág. 833. Así las cosas, la Asamblea Legislativa aprobó la Ley Núm. 127 para aclarar que dicho incumplimiento, sin más, no acarreaba la nulidad de los contratos, sino que prohibía el desembolso de fondos públicos o que se requirieran servicios hasta tanto éstos se registraran conforme dispone la ley y la reglamentación aplicable.(3) Es decir, la Asamblea Legislativa dispuso que *728 el requisito de tramitación (a saber: registro y remisión a la Oficina del Contralor de Puerto Rico de un contrato municipal) puede ser subsanado. Sólo si ello no ocurre, presumiblemente, cabría hablar de la anulación del contrato.
En Lugo v. Municipio Guayama, supra, pág. 219, nos enfrentamos por primera vez a lo dispuesto por la Ley Núm. 127 y reconocimos que dicha ley tenía “el efecto de variar de forma radical la normativa desarrollada por este Tribunal en torno a los contratos municipales”. (Enfasis suprimido.) En virtud de ésta, “los tribunales no podrán decretar la nulidad de un contrato municipal por el solo hecho que éste no haya sido registrado ni remitido a la Oficina del Contralor”. (Énfasis en el original.) íd.
Ello no obstante, dejamos claro que la referida enmienda no tuvo el efecto de alterar la política pública en torno a la contratación municipal. La sana y recta administración pública exige del Gobierno que al actuar como adquirente de bienes o servicios, procure siempre “la mayor eficacia a los fines de proteger los intereses y el dinero del pueblo”. (Énfasis suprimido.) Lugo v. Municipio Guayama, supra, pág. 219. Después de todo, el Estado tiene la obligación de evitar con actos afirmativos la corrupción, el dispendio y la prevaricación en la administración de los fondos públicos. Así, y conforme el alto interés público involucrado, no hay cabida en estos casos para los remedios en equidad. Las Marías v. Municipio San Juan, supra.
Es por ello que las partes privadas deben ejercer un rol más activo al contratar con un municipio, pues éstas *729 no están exentas de cumplir con las leyes aplicables. Cordero Vélez v. Mun. de Guánica, supra; Lugo v. Municipio Guayama, supra. Así, “aquella parte privada que se cruce de brazos y preste servicios sin exigir prueba fehaciente de que el gobierno cumplió con su deber, se arriesga a asumir la responsabilidad por sus pérdidas”. Lugo v. Municipio Guayama, supra, pág. 218.
III
Habiendo expuesto y discutido la normativa aplicable al caso de autos, pasamos a resolver la controversia ante nuestra consideración.
El señor Colón prestó servicios de reparación de maquinaria y equipo pesado al Municipio luego que el señor Ri.vera, Director de Obras Públicas del Municipio, le solicitara estos servicios. El acuerdo entre éstos nunca se consignó por escrito, por lo que tampoco pudo ser registrado en los libros del Municipio ni, mucho menos, remitirse copia de éste a la Oficina del Contralor de Puerto Rico. El Tribunal de Primera Instancia desestimó sumariamente la demanda en cobro de dinero presentada por el señor Colón, concluyendo que no se había cumplido con el requisito de registro y remisión de copia del contrato a la Oficina del Contralor de Puerto Rico.
El Tribunal de Apelaciones, sin embargo, revocó el dictamen anterior al concluir que el hecho de que el contrato no constara por escrito y no se hubiese remitido copia de éste a la Oficina del Contralor de Puerto Rico, “per se, no lo anula[ba]”, ya que lo anterior era un defecto subsanable. El tribunal estimó que, en virtud de lo dispuesto en la Ley Núm. 127, el incumplimiento con el requisito de contrato escrito no era causa para que un tribunal decretase su nulidad. No tiene razón.
Como se indicó previamente, la Ley Núm. 127 enmendó la Ley Núm. 18 para establecer que la no remisión de copia *730 de un contrato municipal ante la Oficina del Contralor de Puerto Rico o la falta de registro de éste en los libros del municipio, no viciaba de nulidad el contrato suscrito. Ello no comporta, como concluye el foro apelativo intermedio, que el mismo principio aplique cuando de lo que se trata es de un acuerdo que nunca se redujo a escrito. Somos del criterio que la Ley Núm. 127 no contempló este escenario.
Existe una marcada diferencia entre unos requisitos y otros. La exigencia de que un contrato suscrito se anote en la bitácora municipal y su copia se remita a la Oficina del Contralor de Puerto Rico va encaminada a ofrecerle publicidad, frente a terceros, a la contratación municipal. De esta forma los terceros pueden fiscalizarla. Sin embargo, exigir que los contratos suscritos se reduzcan a escrito tiene una insoslayable dimensión de sana administración pública, en la medida que permite salvaguardar los intereses de las partes contratantes frente a un incumplimiento, permite la ordenada utilización de los fondos municipales, evita la incertidumbre en la confección del presupuesto municipal y hace posible la adecuada identificación de la partida contra la cual se harán los desembolsos públicos en cumplimiento con la ley. Es decir, los primeros son más que nada de carácter procesal y de ordenada tramitación, mas el último es sustantivo por su directa relación con la sana administración pública. En atención a lo cual, debemos concluir que el incumplimiento con el requisito de reducir a escrito el contrato municipal por fuerza afecta adversamente la eficacia de las obligaciones contraídas.
Así pues, aun cuando en nuestra jurisdicción se admite la contratación verbal como perfectamente vinculante, cuando se trata de un contrato suscrito por un municipio que involucra el desembolso de fondos públicos, la norma general debe dejarse a un lado. Una sana administración pública así lo exige.
Ya nos habíamos expresado bajo estos términos, antes y *731 después de la aprobación de la Ley Núm. 127. E.g.: Municipio Mayagüez v. Lebrón, supra; Ríos v. Municipio Isabela, supra; Hatton v. Mun. de Ponce, supra. Somos del criterio que la Ley Núm. 127 no pretendió avalar la contratación verbal de los municipios. De hecho, en la Exposición de Motivos de la ley se indicó que su propósito era “mantener y apoyar un sistema donde se protejan los intereses de las partes contratantes” —2004 (Parte 1) Leyes de Puerto Rico 589— y ciertamente, la mejor forma de lograr ese objetivo es asegurándose que los términos y las condiciones del contrato consten con claridad, para lo que es indispensable que el contrato se reduzca a escrito. No se puede dejar en manos del mejor recuerdo del funcionario municipal o de un contratista la determinación de qué fue lo que se quiso pactar.
Es importante recalcar, como lo hemos hecho en el pasado, que el contratista municipal debe ser más diligente en su relación con el municipio. Así, el señor Colón debió prestar mayor presteza a este asunto, tomando medidas afirmativas para cerciorarse que el acuerdo verbal al que llegó con el señor Rivera se redujera a un contrato escrito, antes de comenzar a ofrecer sus servicios. No puede ahora evadir las consecuencias de la inobservancia de las normas que regulan la contratación municipal. Dicho de otra forma, el señor Colón se arriesgó y asumió la responsabilidad por sus pérdidas.
Finalmente, por no haber controversia sobre la inexistencia de un contrato válido entre las partes que vinculara al Municipio, procedía dictar sentencia sumaria, como cuestión de derecho, desestimando la reclamación en cobro de dinero presentada por el señor Colón. Del expediente se desprende que era un hecho no controvertido que las partes habían acordado la prestación de los servicios de forma verbal y que lo pactado nunca se redujo a contrato escrito. Habida cuenta de lo anterior y ya que la Ley Núm. 127 no se refiere a situaciones en que el acuerdo entre un munici *732 pió y un ente privado no se recoge por escrito, como en el presente caso, nada impedía que el Tribunal de Primera Instancia dictara sentencia sumariamente. Véanse: Freire Ayala v. Vista Rent, 169 D.P.R. 418 (2006); Vera v. Dr. Bravo, 161 D.P.R. 308 (2004).
IV
Por los fundamentos expuestos anteriormente, procede dictar sentencia para revocar la sentencia dictada por el Tribunal de Apelaciones y desestimar la demanda en cobro de dinero presentada por el señor Colón, ya que entre éste y el Municipio no existía una relación contractual conforme a derecho.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton hace cons-tar lo siguiente: “El Juez Presidente Señor Hernández Denton concurre por entender que a la luz de la normativa establecida recientemente en Cordero Vélez v. Mun. de Guánica, 170 D.P.R. 237 (2007), es indispensable que el contrato suscrito por un municipio con un suplidor conste por escrito para que lo convenido tenga efecto vinculante.” El Juez Asociado Señor Fuster Berlingeri emitió una opinión de conformidad. El Juez Asociado Señor Rivera Pérez no intervino.
Opinión de conformidad emitida por el
Juez Asociado Señor Fuster Berlingeri.
Estoy conforme con la opinión del Tribunal en el caso de autos.
No obstante, creo menester emitir esta breve opinión para puntualizar que ya habíamos resuelto específica *733 mente que el requisito formal de reducir a contrato escrito los acuerdos con municipios “tiene carácter constitutivo con respecto a la eficacia de éstos”. (Enfasis suplido.) Fernández & Gutiérrez v. Mun. San Juan, 147 D.P.R. 824, 830 (1999). En este caso citamos nuestros pronunciamientos previos sobre el particular en Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37, 54 (1988), en el cual pautamos por primera vez el requisito formal en cuestión e indicamos que éste debía observarse rigurosamente. Reiteramos en Fernández & Gutiérrez v. Mun. San Juan, supra, lo decidido antes en Ocasio v. Alcalde Mun. de Maunabo, supra, y ampliamos nuestro dictamen para precisar que el requisito formal aludido tenía carácter constitutivo.
Se trata, pues, de una norma claramente establecida de este Foro, que la Asamblea Legislativa no ha alterado mediante la Ley Núm. 127 de 31 de mayo de 2004, como bien se explica en la opinión mayoritaria.

 En el recurso de apelación presentado ante el Tribunal de Apelaciones, el señor Colón argumentó que “no procedía desestimar la demanda por el fundamento de derecho expuesto en la sentencia [del Tribunal Primera Instancia] y en la solicitud de sentencia sumaria que radicó el Municipio, pues los contratos aunque no fueron formalizados ni notificados a la Oficina del Contralor, había amplia evidencia documental de la existencia de una relación contractual que benefició al Municipio”. (Enfasis suplido.) Apéndice, pág. 79.

 Específicamente, hacemos referencia al Art. 8.016 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, según enmendada, 21 L.P.R.A. see. 4366, que establece que
“[l]os municipios mantendrán un registro de todos los contratos que otorguen, incluyendo las enmiendas a los mismos y enviarán copia de éstos y de las escrituras de adquisición y disposición de bienes a la Oficina del Contralor de Puerto Rico, conforme las sees. 97 et seq. del Título 2 y su Reglamento.”
*726 Además, aplica a la contratación municipal el Art. 1 de la Ley Núm. 18 de 30 de octubre de 1975, según enmendada, 2 L.P.R.A. see. 97, que establece lo siguiente:
“... las entidades municipales del Estado Libre Asociado de Puerto Rico, sin excepción alguna, mantendrán un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha de otorgamiento del contrato o la enmienda.”

 Específicamente, la Ley Núm. 127 de 31 de mayo de 2004 enmendó la Ley Núm. 18, supra, para añadir el inciso siguiente:
*728 “(d) El incumplimiento con lo dispuesto en esta sección o con la disposición equivalente relacionada a registros de contratos incluidos en la see. 4366 del Título 21, parte de la ley conocida como ‘Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico’, de por sí no será causa para que un tribunal competente declare la nulidad de cualquier contrato o negocio jurídico legalmente válido. No obstante, ninguna prestación o contraprestación objeto de un contrato podrá exigirse hasta tanto se haya dado cumplimiento a lo dispuesto en esta sección.” (Énfasis suplido.) 2 L.P.R.A. sec. 97(d).