EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad de Energía Eléctrica<br><br>    Peticionaria<br><br>          v.<br><br>Maxón Engineering Services, Inc.<br><br>    Recurrida | Certiorari<br><br>2004 TSPR 197<br><br>163 DPR _____ |

Número del Caso: CC-2002-907

Fecha: 9 de diciembre de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional I

Juez Ponente:

Hon. Jorge Segarra Olivero

Abogados de la Parte Peticionaria:

Lcdo. Arsenio A. Ramos Hernández
Lcda. Viridiana Vázquez McLear
Lcdo. Francisco Javier Ortiz García

Abogados de la Parte Recurrida:

Lcdo. Raúl González Toro
Lcdo. Erasmo Reyes Peña
Lcdo. José A. Tulla Vargas
Lcdo. Alfredo Ortiz Almedina

Materia: Revisión Judicial de Decisión Administrativa del Juez Administrativo de la Autoridad de Energía Eléctrica de Puerto Rico

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Autoridad de Energía Eléctrica

    Peticionaria

        v.

Maxón Engineering Services, Inc.

    Recurrida

CC-2002-907

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 9 de diciembre de 2004.

La Autoridad de Energía Eléctrica (en adelante A.E.E.) nos solicita la revisión de una sentencia emitida por el antiguo Tribunal de Circuito de Apelaciones en la cual se confirmó la decisión de un Juez Administrativo de la mencionada corporación pública de adjudicar cierta subasta a favor de Maxón Engineering Services Inc. (en adelante Maxón). Examinados los hechos de este caso, así como la normativa aplicable, revocamos la determinación del foro apelativo intermedio. Veamos.

I.

La A.E.E. cursó invitación a pública subasta encaminada a otorgar un contrato para la rehabilitación de la Caldera #5 de la Central Termoeléctrica Costa Sur. A la misma comparecieron los siguientes licitadores con sus respectivas ofertas:

| Licitadores | Cotización |
|---|---|
| Central Industrial Services, Inc. | $4,723,000 |
| KD Contractors | $4,958,000 |
| Maxón Engineering Services, Inc. | $5,004,290 |
| Ensysa Product Manufacturing Inc. | $5,735,478 |

Evaluadas las solicitudes, el Comité Permanente de Subasta de la A.E.E. adjudicó la buena pro a Central Industrial Services Inc. (en adelante Central) como el licitador más bajo que cumplía con las especificaciones, términos y condiciones de la subasta.[1] Dicha

---

[1] En cuanto a la propuesta de Central, el Comité Permanente de Subasta de la A.E.E. expresó:

> Esta Compañía está cualificada técnicamente. No han realizado este trabajo anteriormente. **Presentan evidencia de empleados supervisores con experiencia en trabajos similares**. No hace excepción a las especificaciones técnicas de las Condiciones Especiales. Están evaluados para proveer el servicio solicitado en la subasta. No sometieron precio unitario para los trabajos adicionales, pero se calculó el mismo al dividir el precio total cotizado en el total de unidades. Esta operación matemática aplica en igualdad de condiciones a los otros licitadores. Cumple con los términos comerciales requeridos para la misma. Su precio cotizado es $4,723,000, el cual es el más bajo evaluado. (Énfasis suplido).

determinación le fue comunicada a los licitadores no favorecidos.

Oportunamente, Maxón solicitó reconsideración. En lo pertinente, alegó que la compañía favorecida no cumplía con los requisitos de <u>experiencia</u> establecidos por la A.E.E. en los pliegos de subasta. El Juez Administrativo designado por la A.E.E. para entender en el asunto acogió la solicitud de reconsideración presentada por Maxón.[2] Al así hacerlo, anuló la determinación del Comité Permanente de Subasta de la A.E.E. y adjudicó la subasta a favor de Maxón. Particularmente, y respecto a los requerimientos de experiencia previa que contempla el Art. 20 de las "Condiciones Especiales y Especificaciones Técnicas del Contrato", el Juez Administrativo señaló:

> Es evidente que con dichos requerimientos se persigue que el licitador agraciado tenga la capacidad de proveer un servicio de calidad y que se pueda probar o constatar la misma. **No se refiere (la cláusula) a la capacidad individual de los empleados del proveedor. Sino a la capacidad de la compañía de unir sus recursos y demostrar, con hechos, sus ejecutorias.** Nótese, que la especificación exige evidencia de que el sistema o sistemas anteriormente diseñados e instalados estén funcionando de forma satisfactoria.(Énfasis suplido.)
>
> ...

---

[2]  La solicitud de reconsideración presentada por Ensysa fue rechazada de plano debido a que no cumplió con el requisito de prestar una fianza en reconsideración conforme lo exige el Capitulo IV, Sección I, Articulo C (4) del Reglamento de Subasta de la A.E.E.

En el caso que nos ocupa, surge del expediente que el Comité Evaluador patentizó el hecho de que las compañías Central Industrial Inc., y KD Contractors, "No han realizado este trabajo anteriormente".

A base de la información que surge del expediente, las compañías Central Industrial y KD Contractors no cumplen con el Artículo 20 de las Condiciones Especiales y Especificaciones Técnicas por lo que debieron haber sido declarados no responsables bajo el mencionado criterio de responsabilidad.

No conformes, la A.E.E. y Central acudieron en *revisión administrativa* al antiguo Tribunal de Circuito de Apelaciones (en adelante Tribunal de Apelaciones). Dicho foro, bajo fundamentos similares a los expuestos por el Juez Administrativo de la A.E.E., denegó expedir el auto solicitado.

Insatisfecha, la A.E.E. acudió ante nos. Plantea que tanto el juez Administrativo de la A.E.E., como el foro apelativo intermedio, incidieron al descalificar a Central por alegada falta de experiencia para brindar los servicios requeridos en la subasta. Acordamos expedir. Con el beneficio de las comparecencias de ambas partes, resolvemos.

II.

De entrada, es menester señalar que los preceptos legales que rigen las relaciones económicas entre entidades privadas y las agencias gubernamentales están revestidos de un gran interés público y aspiran a promover una sana y recta administración pública.

Fernández & Gutierrez v. Mun. San Juan, 147 D.P.R. 824, 829 (1999); Hatton v. Mun. De Ponce, 134 D.P.R. 1001, 1005 (1994). A fin de cuentas, "[l]a buena administración de un gobierno es una virtud de democracia, y parte de una buena administración implica llevar a cabo sus funciones como un comprador con eficiencia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa." RBR Const., S.E. v. A.C., 149 D.P.R. 836, 848-849; Oliveras, Inc. v. Universal Ins. Co., 141 D.P.R. 900, 926-927 (1996); Hatton v. Mun. De Ponce, supra; Mar-Mol Co. Inc. v. Adm. Servicios Gens., 126 D.P.R. 864, 871 (1990).

Para dar cumplimiento a esta encomienda, de ordinario se exige que el gobierno realice la adquisición de los materiales y servicios que necesita a través de subastas públicas. El objetivo principal de toda subasta pública es "que haya competencia en las proposiciones de manera que el Estado consiga que se realice la obra al precio más bajo posible. Además, al requerirse que la subasta y el contrato se adjudiquen al postor más bajo, se evita que haya favoritismo, corrupción, extravagancia y descuido al otorgarse los contratos." Fernández & Gutiérrez v. Mun. San Juan, supra a la pag. 831; Oliveras, Inc. v. Universal Ins. Co., supra, a la pág. 926-927; Mármol Co., Inc. v Adm. Servicios Gens., supra a la pág. 871; Cancel v.

Municipio de San Juan, 101 D.P.R. 296, 300 (1973); Justiniano v. E.L.A., 100 D.P.R. 334, 338 (1971). Ahora bien, lo anterior no implica que las agencias no gocen de ninguna discreción en la evaluación de las distintas propuestas sometidas. **Cuando se trata, como en el presente caso, de la adquisición de servicios técnicos de gran costo y sofisticación la selección de un proveedor sobre otros puede conllevar decisiones que descansen, no en criterios estrictamente matemáticos, sino en una valoración de la tecnología, y los recursos humanos con que cuenta ésta, a la luz de las necesidades presentes y futuras de la agencia.**

En Puerto Rico, la Asamblea Legislativa no ha estimado necesario aprobar una ley especial que regule los procedimientos de subasta aplicable a todas las compras gubernamentales. Queda pues, a la discreción de cada agencia, como entidad con el conocimiento especializado, aprobar un reglamento que establezca el procedimiento y las guías a seguir en sus propias subasta. L.P.C. & D. Inc. v. A.C., 149 D.P.R. 869, 875 (1999); RBR Const., S.E. v. A.C., *supra*, a la pág. 850.

La Ley de la Autoridad de Energía Eléctrica de Puerto Rico, en el inciso (1) de la sección 15 (22 L.P.R.A. sec. 205), adopta la política pública anteriormente delineada al disponer, en lo pertinente, que:

> **Todas las compras y contratos de suministros o servicios, excepto servicios personales, que se hagan por la Autoridad, incluyendo contratos para la construcción de obras de la misma, se harán mediante anuncio de subasta** hecho con suficiente antelación a la fecha de apertura de pliegos de proposiciones, para que la Autoridad asegure el adecuado conocimiento y oportunidad de concurrencia de licitadores... La Autoridad podrá aprobar reglamentos para la presentación de licitaciones. (Énfasis nuestro.)

A tenor con dicho mandato-- y con el propósito de instituir guías uniformes para la recomendación, adjudicación y aprobación de subasta para la adquisición de bienes y servicios cuyo costo excede de $20,000 dólares-- la mencionada corporación pública aprobó el Reglamento de Subastas de la Autoridad de Energía Eléctrica, Reglamento Núm. 4897 de 25 de marzo de 1993.[3]

En lo pertinente, en su Cáp. II, Sec. 10, Art. A (1) y (2), el citado Reglamento establece los requisitos que la A.E.E. debe tomar en consideración al momento de adjudicar una subasta, a saber: cumplimiento con las especificaciones; habilidad del licitador para suplir los bienes y/o servicios requeridos en la subasta bajo consideración; la calidad de los materiales, equipos o servicios ofrecidos y su adaptabilidad a las especificaciones establecidas por la entidad adquirente;

---

[3] Dicho Reglamento fue derogado por el Reglamento Núm. 6646 de 24 de julio de 2003. Empero, por tratarse aquí de una controversia que surge con anterioridad a la vigencia de éste, sus disposiciones no son de aplicación al presente caso.

la responsabilidad económica del licitador; su pericia,

**experiencia** e integridad comercial; y el tiempo de

entrega o de cumplimiento que se ofrezca. Luego de

ponderar todos los factores pertinentes, la subasta se

debe adjudicar a favor del postor más bajo cuya oferta

responda sustancialmente y cumpla con todas las

especificaciones, términos y condiciones establecidos en

la Invitación a la Subasta.

Es precisamente, el factor experiencia exigido en el

mencionado Reglamento, el que está en controversia en el

presente caso. Veamos.

III.

Es un hecho incontrovertido que la invitación a la

subasta en el caso de autos, requería a los licitadores

el presentar, con sus propuestas, evidencia de

experiencia previa y satisfactoria en tareas dirigidas a

la rehabilitación de calderas. Dicha exigencia,

consignada específicamente en el Artículo 20 de las

"Condiciones Especiales y Especificaciones Técnicas del

Contrato", establece:

Article 20. Experience and Facilities

In addition to the Requirements of Paragraph
5, Experience and Facilities, of the
Supplementary Instructions to Bidders,
**Bidders shall furnish with their proposals
evidence satisfactory to PREPA to the effect
that they or their represented (sic) have
satisfactorily performed the design of
systems and installation as covered by these
Specifications and which are in satisfactory
operation.**" (Énfasis suplido).

En lo referente al alcance de la mencionada disposición contractual-- y como fundamento para anular la adjudicación de la subasta que la A.E.E. realizó a favor de Central-- el Juez Administrativo de la A.E.E consignó en su resolución que el requerimiento de experiencia no se cumple --como concluyó la A.E.E.-- al demostrar la capacidad individual de los empleados del proveedor para desarrollar el servicio solicitado. A juicio de éste, se requiere estrictamente que la compañía proveedora del servicio haya realizado tareas similares a las que se solicitaban en el pliego de subasta. La A.E.E. entiende que el Juez Administrativo erró en su apreciación. Le asiste la razón. La determinación del Juez Administrativo, dentro de la cual se descarta la **experiencia de los empleados** de Central como factor de cumplimiento de los requisitos establecido por el Art. 20, es contraria a derecho.

Para disponer de este asunto, basta con señalar que un sinnúmero de autoridades en la materia no tan solo consideran viable, <u>sino necesario</u>, el que la agencia contratante tome la experiencia de empleados, socios, directores y hasta subcontratistas del proveedor a los fines del cumplimiento del requisito de experiencia establecido en los pliegos de subasta de un contrato de servicios. *Véase*, McBride & Touhey, *Goverment Contracts*,

Vol. IB, Ed. Lexis-Nexis, 2004, sec. 10.230(5);[4] Donald

P. Arnavas, *Goverment Contract Guidebook*, 3ra. Edición,

Ed. West Group, 1986, sec. 6-23;[5] American Bar

Association, *Government Law: The deskbook for*

*Procurement Professionals*, 1995, pág. 61. Coincidimos

con dicha apreciación.

Ciertamente, en los <u>contratos de servicios</u>, la

evaluación de un licitador no debe estar orientada en la

---

[4]   En su reciente publicación para el año 2004,
McBride & Touhey en *Goverment Contracts*, *supra*, nos
señala:

> **Experience requirements in an IFB**
> [Invitation for bids] **are definitive**
> **responsibility. It is therefore proper for**
> **the Contracting Officer to consider the past**
> **performance of key employees when**
> **affirmatively determining a new company's**
> **responsibility...Similarly, the experience**
> **of a technically qualified subcontractor or**
> **affiliate may be used to satisfy definitive**
> **responsibility criteria relating to**
> **experience...In addition, the experience of**
> **one venturer of a joint venture can be used**
> **to determine that a joint ventures satisfies**
> **a definitive responsibility criterion.**
> (Enfasis suplido y citas omitidas.)

[5]   Sobre este particular, el Profesor Donald P.
Arnavas, en su obra *Goverment Contract Guidebook*, *supra*,
establece:

> **§ 6.23 Contractor Past Performance**
> ...
> The evaluation should take into account
> "relevant" past performance information
> regarding and offeror's predecessor
> companies, **key personnel**, and mayor
> subcontractors, and must be consider the
> currency, relevance, source, and context of
> the information, and general trends in
> contractor's performance. (Énfasis suplido.)

ficción de que la experiencia de los empleados es un concepto separado o diferente de la experiencia de la compañía. **Después de todo, las personas jurídicas, como lo serían en este caso los proveedores de servicios para la rehabilitación de calderas, no pueden operar sino es a través de seres humanos que le asisten, y que son éstos en última instancia, y no aquellos, los que pueden ejecutar acciones y acumular experiencia.** Por ello, la necesidad de que en el momento en que se vaya a determinar si un licitador cumple con los criterios de experiencia previa, se tome en consideración las habilidades, conocimientos, destrezas, y adiestramiento de aquellos que la forman, entiéndase, sus recursos humanos.[6] Así correctamente lo entendió el Comité de Subasta de la A.E.E. al adjudicar la subasta a favor de Central.

IV.

En el presente caso, al momento de hacer la apertura de la subasta la A.E.E. identificó unos requisitos

---

[6] Al respecto, se nos indica en American Bar Association, *Government Law: The deskbook for Procurement Professionals*, *supra*, a las págs 61-62:

> In service contracts, a contractor's personnel are very important. Therefore, evaluation criteria should address evaluation of proposed personnel, including: education, training, and experience; amount of time they actually will perform under the contract; the likelihood that a proposed new hire will agree to work; impact on other contracts; etc. (Citas Omitidas.)

técnicos con los que el proyecto debía cumplir, entre ellos, claro está, el de experiencia previa de los licitadores brindando el servicio de rehabilitación de calderas. Los licitadores sabían las condiciones, términos y requisitos exigidos por la A.E.E. Conforme surge del expediente que obra en nuestro poder, y a la luz de lo que hemos resuelto, la oferta presentada por Central no se apartó de los requisitos y especificaciones deseados por la A.E.E.[7] La agencia, con

---

[7] Es menester destacar que el requisito de experiencia establecido por la A.E.E, como agencia contratante, era uno que debía demostrarse como evidencia satisfactoria para la mencionada corporación publica.

Al respecto, debemos afirmar que de autos se desprende que sí se presentó, por parte de Central, evidencia satisfactoria en cuanto al cumplimiento de dicho requisito, entre ellas; personal altamente cualificado para desarrollar este tipo de trabajo; certificaciones expedidas por la National Board of Boiler and Pressure Inspectors, en especifico la "R-Stamp" que le certifica como entidad diestra en el manejo de las reparación y rehabilitación de calderas, entre otras.

Resalta la experiencia del Ing. Cesar A. Báez Hernández, Administrador de Proyectos para la División de Centrales Generatrices de Central y anterior empleado de la A.E.E. El Ing. Báez Hernández mientras laboraba para la A.E.E. estuvo a cargo de la calderas de la mencionada corporación pública entre los años 1998 al 2001 en la Planta de Palo Seco. En noviembre de 1998 estuvo a cargo de la rehabilitación realizada, con el personal de la A.E.E., a la caldera de la Unidad #1 de la Planta de Palo Seco. En 1999 dirigió el mismo trabajo de la rehabilitación de la Caldera de la Unidad #2 de la misma planta.

Así también resalta la experiencia del Ing. Nicholas F. Márquez, quien actualmente se desempeña como "Quality Manager" de Central, y que según demuestra su hoja de experiencia profesional ha escrito y

su vasta experiencia y especialización, se encuentra, de ordinario, en mejor posición que nosotros para determinar el mejor licitador tomando en consideración los factores esgrimidos tanto por la ley como su Reglamento de Subastas.[8] Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521, 533 (1993); Rubin Ramirez v. Trías Monge, 111 D.P.R. 481, 484-485 (1981). No había razón, ni evidencia en record, que ameritase el revocar la determinación del Comité de Subasta de la A.E.E.

Si bien es cierto que debemos gran deferencia a las decisiones de las agencias administrativas, cuando éstas son contrarias a derecho, nada nos impide intervenir. *Véase*, Sec. 4.5 de la Ley de Procedimientos Administrativos Uniforme, 3 L.P.R.A. sec. 2175; Pacheco

---

desarrollado varios manuales sobre el proceso de rehabilitación de calderas.

[8]    Resulta necesario destacar, que el Comité que en primera instancia evaluó la subasta objeto de litigio estuvo compuesto por altos ejecutivos de la A.E.E., quienes sin lugar a dudas, por la posición que ocupan, poseen la pericia necesaria para evaluar, determinar y recomendar aquellos licitadores que verdaderamente cumplen con las exigencias de la agencia contratante. Entre los miembros del Comité Permanente de Subasta se encontraban: el Sr. Luis Figueroa Báez, Director de Finanzas de la A.E.E y Presidente del Comité de Subasta; Ing. Jorge L. Leavitt Rey, Director Sistema Eléctrico; Lcdo. Wilfredo Pantojas Reyes, Director de Servicios Administrativos; Ing. Valeriano Otero, Director de Transmisión y Distribución; Ing. Milagros Calixto, Directora de Ingeniería; Lcda. Maria M. Méndez Rivera Consultora Jurídica; Sr. Luis F. Jiménez Pagan, Jefe División de Conservación y Suministros; Ing. David Marrero, Administrador de Proyectos; Ing. Edwin Miranda, Jefe de División de Conservación y Servicios Técnicos; y el Ing. Edgardo Díaz, Asesor Técnico en Producción.

<u>Torres v. Estancia de Yauco, S.E.</u>, res. el 30 de septiembre de 2003, 2003 TSPR 148. La ausencia total de fundamentos razonables, de parte del Juez Administrativo de la A.E.E, tanto para anular la subasta como para rechazar la propuesta de Central, nos fuerza a concluir que la decisión de éste, confirmada por el foro apelativo intermedio, fue contraria a derecho. El error señalado fue cometido.

V.

Por los fundamentos expuestos en la Opinión que antecede, se revoca el dictamen emitido por el Tribunal de Apelaciones y se sostiene, por lo tanto, la adjudicación de la subasta a favor de Central.

Federico Hernández Denton<br>Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Autoridad de Energía Eléctrica

    Peticionaria

        V             CC-2002-907

Maxón Engineering Services, Inc.

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 9 de diciembre de 2004.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se revoca la resolución emitida por el hoy Tribunal de Apelaciones y se sostiene, por lo tanto, la adjudicación de la subasta a favor de Central Industrial Services Inc.

Lo acordó el Tribunal y certifica la Subsecretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta concurre con el resultado sin opinión escrita.

María I. Colón Falcón
Subsecretaria del Tribunal Supremo