EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Edward Cordero Vélez<br><br>    Recurrido<br><br>        v.<br><br> Municipio de Guánica;<br> Hon. Martín Vargas Morales,<br> Alcalde; Junta de Subastas,<br> Municipio de Guánica<br><br>    Peticionarios | Certiorari<br><br>2007 TSPR 24<br><br>170 DPR ____ |

Número del Caso: AC-2005-76

Fecha: 12 de febrero de 2007

Tribunal de Apelaciones:

> Región Judicial de Ponce-Panel X

Juez Ponente:

> Hon. German J. Brau Ramírez

Abogados de la Parte Peticionaria:

> Lcdo. Juan P. Rivera Román
> Lcda. Darlena H. Connick Waska

Abogado de la Parte Recurrida:

> Lcdo. César E. Rodríguez Rodríguez

Materia: Incumplimiento de Contrato

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Edward Cordero Vélez

    Recurrido

       v.                       AC-2005-76

Municipio de Guánica;
Hon. Martín Vargas Morales,
Alcalde; Junta de Subastas,
Municipio de Guánica

    Peticionarios

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 12 de febrero de 2007.

Nos corresponde determinar si procede una acción por incumplimiento contractual y daños y perjuicios contra un municipio en virtud de una subasta que no se adjudicó formalmente y que tampoco culminó en el otorgamiento de un contrato escrito. Por entender que no se perfeccionó un contrato entre las partes conforme a la legislación y jurisprudencia aplicable a la contratación municipal, resolvemos que la reclamación contra el Municipio no procede en derecho.

I

En abril de 2001, el Municipio de Guánica celebró una subasta general que incluía, entre

otras cosas, un renglón para la compra de combustible para los vehículos del Municipio. El suministro contemplado en esta subasta se extendería hasta el 30 de junio de 2001, fecha del cierre de ese periodo fiscal. El Sr. Edward Cordero Vélez, dueño de una estación de gasolina dedicada a la venta de combustible al detal, compareció a la convocatoria como licitador.

Poco después, la Junta de Subastas del Municipio de Guánica (en adelante, Junta) le notificó al señor Cordero Vélez mediante carta suscrita por el Secretario Municipal que se le había adjudicado la subasta en el renglón de suministro de combustible. Tras la adjudicación de la buena pro, las partes no otorgaron el contrato correspondiente ni realizaron trámite ulterior alguno. No obstante, el Municipio comenzó a adquirir el combustible para sus vehículos en la estación de gasolina del señor Cordero Vélez.

En mayo de 2001, la Junta anunció **otra** subasta general para el periodo comprendido entre el 1 de julio de 2001 hasta el 30 de junio de 2002 (en adelante, año fiscal 2001-2002). El señor Cordero Vélez concurrió a la celebración de esa subasta y fue el único licitador en el reglón de combustible. Éste alega que ese día el Secretario Municipal le comentó verbalmente que la misma se le iba a adjudicar por haber sido el único licitador. La Junta, sin embargo, no le envió al señor Cordero Vélez

ninguna     notificación     oficial     o     carta     escrita
adjudicándole finalmente la subasta.

Oportunamente, el Presidente de la Junta le remitió
una carta a la Asamblea Municipal comunicándole que la
subasta para el año fiscal 2001-2002 se había declarado
desierta. Al señor Cordero Vélez no se le notificó dicha
determinación ni los fundamentos para la misma.

De las alegaciones no controvertidas surge que,
posteriormente, se celebró una segunda subasta para los
renglones que no se habían cubierto en la convocatoria
anterior. Sin embargo, por ausencia de licitadores, esta
subasta también se declaró desierta en el renglón de
combustible. Cabe mencionar que el señor Cordero Vélez
testificó que desconocía la celebración de esta subasta.

Poco después, transcurrió el periodo fiscal que
comprendía los servicios adjudicados formalmente al señor
Cordero Vélez en virtud de la subasta celebrada en abril
de ese mismo año. No obstante, el Municipio continuó
comprando combustible en su estación de gasolina. Para
estas adquisiciones las partes tampoco otorgaron un
contrato escrito.

En agosto de ese año, el señor Cordero Vélez se
enteró que el Municipio también le compraba combustible a
otro detallista. En vista de ello, realizó gestiones
ante la entidad municipal -sin éxito- para exigir
explicaciones por la falta de exclusividad. Al cabo de un
tiempo, el Municipio le respondió que entre ambas partes

no existía una relación contractual de la cual surgiera un derecho a reclamar. En particular, el Secretario Municipal le comunicó al señor Cordero Vélez que él no tenía una subasta adjudicada. De este modo, la entidad municipal descontinuó el pago y la compra de combustible en la estación del señor Cordero Vélez.

A la luz de lo anterior, el señor Cordero Vélez presentó varias acciones judiciales de las cuales tomamos conocimiento judicial. En primer lugar, instó una reclamación en cobro de dinero ante el Tribunal Municipal de Guánica. En aquella ocasión, el tribunal emitió una sentencia a su favor por la suma de $488.01, pese a que el demandante había solicitado una suma considerablemente mayor.

En segundo lugar, presentó un recurso ante el Tribunal de Apelaciones para impugnar la subasta para el año fiscal 2001-2002. Mediante el mismo, solicitó la revisión de la determinación de la Junta de no adjudicarle la subasta, así como la actuación del Municipio de comprar combustible a otros suplidores. El tribunal apelativo intermedio desestimó el recurso sin perjuicio por considerar que no era el foro competente para entender –en primera instancia– en las controversias planteadas y los remedios solicitados.

En vista de lo anterior, el señor Cordero Vélez presentó ante el Tribunal de Primera Instancia, Sala Superior de Ponce, la acción judicial que nos ocupa por

incumplimiento de contrato y cobro de dinero. En la demanda, el señor Cordero Vélez alegó que, mediante la subasta para el año fiscal 2001-2002, se estableció una relación contractual entre su persona y el Municipio de Guánica. Adujo que el Municipio terminó dicha relación sin justificación válida, causándole pérdidas, daños y angustias mentales ascendentes a treinta mil dólares ($30,000.00). El Municipio, por su parte, negó las alegaciones del demandante y alegó como defensa la inexistencia de la relación contractual.

Luego de los trámites de rigor, el foro de instancia dictó sentencia mediante la cual declaró con lugar la demanda. Concluyó que el Municipio de Guánica le adjudicó al señor Cordero Vélez la subasta para el año fiscal 2001-2002. Interpretó que la Junta no podía declarar desierta una subasta cuando había recibido, al menos, una licitación. Además, consideró que "el Municipio mediante su Secretario Municipal le indicó [al señor Cordero Vélez] que le había adjudicado la subasta."

A la luz de los fundamentos expuestos, dicho foro entendió que de aquella subasta había nacido una relación contractual entre las partes y, luego de declarar la demanda con lugar, ordenó al Municipio el pago de una indemnización de veinticinco mil dólares ($25,000.00) por los daños y perjuicios causados al demandante.

Inconforme con dicho dictamen, el Municipio recurrió ante el Tribunal de Apelaciones. Este foro confirmó

parcialmente el dictamen recurrido al entender que carecía de elementos de juicio para intervenir con la determinación del foro de instancia respecto a que "el Municipio efectivamente había ratificado el otorgamiento de la subasta al apelado y que se había obligado a comprarle gasolina a éste, con exclusión de otros suplidores."

Sin embargo, como reconoció que el pago de una obligación municipal con fondos públicos está condicionada a que se sigan los procedimientos establecidos por ley, ordenó que se otorgara un contrato por escrito, se inscribiera en el registro municipal de contratos y se notificara a la Oficina del Contralor junto con copia de dicha sentencia. Por otro lado, el Tribunal de Apelaciones revocó la partida concedida en daños y devolvió el caso al foro de instancia con el fin de que el demandante presentara evidencia de sus daños y de los ingresos dejados de percibir como resultado del alegado incumplimiento.

Inconforme aún, el Municipio de Guánica recurrió ante nos y reprodujo los mismos argumentos planteados ante el Tribunal de Apelaciones. Adujo, en esencia, que incidió el Tribunal de Primera Instancia al determinar la existencia de una relación contractual entre las partes por el mero hecho de que el Secretario Municipal le indicara verbalmente al licitador demandante que se le iba a adjudicar la subasta. Alegó, además, que erró el

tribunal sentenciador al conceder a la parte demandante una indemnización por concepto de daños sin que la prueba desfilada en juicio la justificara.

Examinada la solicitud de *certiorari,* acordamos expedir. Le concedimos al señor Cordero Vélez un término para presentar su alegato, mas no compareció. En vista de ello, procedemos a resolver el recurso solicitado sin trámite ulterior.

## II

Continuamente hemos sostenido que la buena administración de un gobierno conlleva el realizar sus funciones como comprador con eficacia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa. *Lugo Ortiz v. Municipio de Guayama, res. el 29 de octubre de 2004,* 2004 TSPR 166; *RBR Construction, S.E. v. Autoridad de Carreteras,* 149 D.P.R. 836 (1999); *Mar-Mol Co., Inc. v. Adm. de Servicios Generales,* 126 D.P.R. 864 (1990). Por consiguiente, a los fines de proteger el erario, el gobierno realiza la adquisición de los materiales y servicios que necesita, al igual que la construcción de obras públicas, mediante la celebración de subastas.

Reiteramos que la normativa relacionada con las subastas gubernamentales persigue que el contrato se adjudique al mejor postor, con el fin de evitar que haya favoritismo, corrupción, extravagancia y descuido al otorgarse los contratos. *Autoridad de Energía Eléctrica*

*v. Maxon Engineering Services, Inc., res. el 9 de diciembre de 2004,* 2004 TSPR 197; *Justiniano v. E.L.A,* 100 D.P.R. 334 (1971). Fundamentalmente, la consideración primordial al momento de determinar quién debe resultar favorecido en el proceso de adjudicación de subastas debe ser el interés público en proteger los fondos del pueblo de Puerto Rico.

A tenor con la política pública expuesta, la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como la "Ley de Municipios Autónomos", 21 L.P.R.A. sec. 4001 *et seq.,* establece los procedimientos a seguir para la celebración y adjudicación de subastas municipales. En particular, esta ley dispone que, como norma general, se deben celebrar subastas para "las compras de materiales, equipo, comestibles, medicinas y otros suministros de igual o similar naturaleza […] que excedan de cuarenta mil (40,000) dólares". 21 L.P.R.A. sec. 4501(a).

La Ley de Municipios Autónomos, *supra,* delega en una Junta de Subastas –a ser constituida en cada Municipio– la responsabilidad de entender y **adjudicar todas las subastas** que se requieran por ley, reglamento u ordenanza. 21 L.P.R.A. sec. 4506. A estos efectos, todos los acuerdos y resoluciones de dicha Junta se deberán tomar por la mayoría total de los miembros que la componen, salvo que otra cosa se disponga. 21 L.P.R.A. sec. 4505.

El estatuto en cuestión le concede discreción a la Junta de Subastas al evaluar las licitaciones sometidas. Por ejemplo, la Junta podrá rechazar "todos y cada uno de los pliegos de subasta que se reciban como resultado de una convocatoria" cuando se den las circunstancias descritas en la ley. 21 L.P.R.A. sec. 4506(b). Además, podrá declarar desierta una subasta y convocar a otra o recomendar a la legislatura municipal que autorice atender el asunto administrativamente, cuando ello resulte más económico y ventajoso a los intereses del municipio. 21 L.P.R.A. sec. 4506(d).

Sin embargo, en caso de celebrarse una subasta y recibirse una sola licitación, la Ley de Municipios Autónomos, *supra,* establece que:

> […] **la Junta podrá adjudicar** al único licitador **o proceder a convocar una segunda subasta** notificándole al único licitador las razones por las cuales no le adjudicará la subasta y la considerará desierta. (Énfasis suplido). *Id.*

En caso de una segunda convocatoria en la cual vuelva a concurrir un solo licitador, la Junta tendrá la opción de "adjudicar al único licitador o someter el asunto administrativamente para la autorización de la legislatura municipal." *Id.*

Respecto a la adjudicación de la subasta, el referido estatuto establece que ésta será **"notificada a todos los licitadores** certificando el envío de dicha adjudicación mediante correo certificado con acuse de recibo". *(Énfasis suplido).* 21 L.P.R.A. sec. 4506(a). De

igual forma, dispone que la Junta notificará a los licitadores no favorecidos las razones por las cuales no se les adjudicó la subasta. *Id.* Para ello, la notificación tiene que ser clara y eficaz; no basta que la notificación sea verbal, sino que se requiere que sea por escrito.

De la normativa antes expuesta, se desprende que la Junta de Subastas es la única entidad con facultad para tomar decisiones respecto a la adjudicación de subastas y éstas se toman, no por un miembro, sino por una mayoría.

De otra parte, cuando concurre únicamente un licitador, la Junta tiene la **potestad** de adjudicarle la subasta, sin embargo no es una obligación. Por el contrario, la Junta tiene la facultad de alegar circunstancias para no adjudicar al único licitador, en cuyo caso tendrá que notificárselo por escrito de forma fundamentada y continuar con los trámites dispuestos por ley.

En caso de que la Junta determine adjudicar la buena pro a un licitador, del estatuto examinado claramente se colige que **toda** adjudicación se tendrá que notificar, tanto al licitador agraciado como a los no favorecidos. El propósito de ello es que las partes afectadas puedan solicitar revisión judicial de la determinación ante el Tribunal de Apelaciones dentro del término jurisdiccional aplicable. 21 L.P.R.A. sec. 4506(a) y 4702.

De otra parte, desde hace más de tres décadas establecimos que en nuestro ordenamiento "una agencia tiene el derecho de revocar la adjudicación de la subasta antes de que se formalice el contrato correspondiente […]." *Justiniano v. E.L.A., supra; Cancel v. Municipio de San Juan,* 101 D.P.R. 296 (1973). El fin social que persigue la facultad de rechazar las licitaciones o de cancelar la subasta una vez adjudicada es conceder cierto grado de discreción y flexibilidad que le permita al ente administrativo proteger sus intereses adecuadamente. *RBR Construction, S.E. v. Autoridad de Carreteras, supra.* La referida norma "reconoce esta facultad de la Junta de Subasta precisamente para evitar la posibilidad de favoritismo, descuido, extravagancia y corrupción." *(Citas omitidas). Continental Construction Corp. v. Municipio de Bayamón,* 115 D.P.R. 559 (1984).

Es principio establecido que la facultad del Municipio de obligar fondos públicos para el pago de una obligación está supeditada a que se sigan los procedimientos establecidos por ley. Por tal motivo, en numerosas ocasiones nos hemos expresado en favor de la aplicación de una normativa restrictiva en la contratación municipal. A tales efectos, en *Lugo Ortiz v. Municipio de Guayama, supra,* reiteramos la "rigurosidad de los preceptos legales que rigen las relaciones comerciales entre entes privados y los municipios, que aspiran a promover una sana y recta administración

pública, asunto que está revestido del más alto interés público." *Fernández Gutiérrez v. Municipio de San Juan,* 147 D.P.R. 824 (1999)*; Véase también *Ríos et al. v. Municipio de Isabela, res. el 15 de julio de 2003,* 2003 TSPR 122.

En particular, para que los contratos otorgados por municipios sean válidos, éstos deben satisfacer ciertos requisitos formales. Entre ellos, es **indispensable** que el contrato conste por escrito para que lo convenido tenga efecto vinculante. *Fernández & Gutiérrez v. Mun. de San Juan, supra.* Además, se requiere que se mantenga un registro fiel con miras a establecer la existencia del contrato; que se remita copia del mismo a la Oficina del Contralor, salvo determinadas excepciones; y que se acredite la certeza de tiempo; esto es, que fue realizado y otorgado quince (15) días antes. *Lugo Ortiz v. Municipio de Guayama, supra; Ríos et al. v. Municipio de Isabela, supra; Ocasio v. Alcalde Mun. Maunabo,* 121 D.P.R. 37 (1988). Incluso, no se autorizará desembolso alguno relacionado con contratos sin la constancia de haberse enviado el contrato a la Oficina del Contralor. 21 L.P.R.A. sec. 4354.

En diversas ocasiones hemos declarado nulos y sin efecto acuerdos pactados en contravención con las normas antes dispuestas. Sin embargo, a tenor con la Ley Núm. 127 de 31 de mayo de 2004, la cual enmienda la Ley Núm. 18 de 30 de octubre de 1975, los tribunales no podrán

decretar la nulidad de un contrato municipal o negocio jurídico legalmente válido **"por el solo hecho** de que éste no haya sido registrado ni remitido a la Oficina del Contralor." *(Énfasis suplido). Lugo Ortiz v. Municipio de Guayama, supra.*

Resulta pertinente recalcar que los tribunales debemos velar por el cumplimiento con las disposiciones legales dirigidas a proteger los desembolsos públicos, ya que esta normativa tiene como fin proteger el interés público en los dineros del pueblo y no a las partes contratantes. *De Jess González v. A.C.,* 148 D.P.R. 255, 267-268 (1999)*; Hatton v. Municipio de Ponce,* 134 D.P.R. 1001 (1994)*; Morales v. Municipio de Toa Baja,* 119 D.P.R. 682 (1987).

Examinada la normativa pertinente a la adjudicación de subastas y a la contratación con entidades municipales, procedemos a atender la controversia ante nuestra consideración.

### III

Para determinar si surgió una relación contractual entre el Municipio y el señor Cordero Vélez en virtud de la subasta para el año fiscal 2001-2002, debemos evaluar primordialmente si ésta, en efecto, se le adjudicó.

Como señalamos anteriormente, el Municipio aduce que la relación contractual es inexistente toda vez que las partes no otorgaron un contrato escrito. Plantea que el hecho de que el Secretario Municipal le comentara

verbalmente al señor Cordero Vélez que la subasta se le iba a adjudicar, no es suficiente para obligar al Municipio a adjudicarle formalmente dicha subasta y perfeccionar un contrato. Entendemos que le asiste la razón.

De los hechos señalados se desprende que el señor Cordero Vélez comenzó su relación comercial con el Municipio de Guánica a raíz de una subasta celebrada en abril de 2001, correspondiente al periodo fiscal que finalizaba el 30 de junio de ese año. La Junta le adjudicó formalmente dicha subasta al señor Cordero Vélez mediante notificación escrita al efecto. Aunque procedía otorgar un contrato escrito y cumplir con las formalidades legales a los fines de que el Municipio pudiera desembolsar fondos públicos conforme al derecho aplicable, no existe controversia respecto al cumplimiento con los términos de esta subasta.

La controversia en el caso de autos gira en torno a otra subasta, la celebrada en mayo de 2001 para el año fiscal 2001-2002. Al aplicar los preceptos antes expuestos sobre el procedimiento para la celebración y adjudicación de subastas municipales, resulta indiscutible sostener que –contrario a la anterior– la subasta en cuestión no se adjudicó. Veamos.

Luego de la apertura de la subasta donde el señor Cordero Vélez fue el único licitador, el Secretario Municipal le comentó que la misma se le iba a adjudicar.

El Tribunal de Primera Instancia consideró que este hecho era pertinente al resolver como lo hizo. No obstante, en vista de que la Ley de Municipios Autónomos, *supra*, establece que es la Junta la que entiende y adjudica todas las subastas, no procede conferirle ningún efecto jurídico al comentario verbal emitido por un funcionario municipal. Reafirmamos esta conclusión si tomamos en cuenta la jurisprudencia aplicable a los efectos de que la adjudicación no vincula hasta tanto se haya perfeccionado el contrato. *Justiniano v. E.L.A., supra; Cancel v. Municipio de San Juan, supra.*

Además, es norma establecida que la notificación tiene que hacerse por escrito para que la misma sea adecuada en este tipo de determinación. Como vimos, en el caso de autos la Junta no le envió al señor Cordero Vélez ninguna notificación escrita, ni adjudicándole finalmente la subasta para el año fiscal 2001-2002, ni explicándole los fundamentos para rechazar su propuesta. Evidentemente, la Junta incumplió con una obligación dispuesta por ley. Sin embargo, de lo anterior no se colige que el Municipio quedó obligado a perfeccionar un contrato a favor del señor Cordero Vélez. Hemos sostenido que una parte no puede pretender ampararse en una actuación administrativa incorrecta o ilegal. *González Fuentes v. E.L.A., res. el 29 de marzo de 2006,* 2006 TSPR 44; *Magriz v. Empresas Nativas,* 143 D.P.R. 63 (1997).

Cabe señalar que el señor Cordero Vélez, por su parte, tampoco le requirió a la Junta información o notificación sobre la adjudicación, aún cuando ése había sido el mecanismo que la Junta utilizó para adjudicarle propiamente la subasta celebrada en abril de 2001, correspondiente al año fiscal anterior al que está en controversia. El señor Cordero Vélez no debió quedarse cruzado de brazos. Hemos establecido que, en casos de contratación municipal, las partes privadas deben ejercer un rol más activo, toda vez que no están exentas del cumplimiento de la ley. *Lugo Ortiz v. Municipio de Guayama, supra; Hatton v. Municipio de Ponce, supra.*

A la luz de lo anterior, resolvemos que la subasta para el año fiscal 2001-2002 no se le adjudicó al señor Cordero Vélez. Por consiguiente, no pudo surgir una relación contractual entre las partes en virtud de la misma. Ahora bien, debemos evaluar si surgió una relación contractual entre las partes bajo otro fundamento.

El Tribunal de Apelaciones, aunque determina que no se cumplieron las formalidades exigidas por la ley para perfeccionar un contrato municipal, confirma el dictamen del foro de instancia bajo el fundamento de que, mediante las compras en la estación del señor Cordero, el Municipio ratificó el otorgamiento de la subasta.

Reiteramos que cuando se trata de contratos con entidades gubernamentales regidos especialmente por la Ley de Municipios Autónomos, *supra,* se considera primero

la validez del acuerdo a la luz del estatuto mencionado, en lugar de acudir de lleno a la teoría general de contratos. *Municipio de Ponce v. Autoridad de Carreteras,* 153 D.P.R. 1 (2000).

En este caso, nunca se otorgó un contrato por escrito. Tampoco se satisfizo **ninguna** de las formalidades aplicables a los contratos municipales, las cuales se exigen rigurosamente con miras a proteger el interés público. La salvedad que establece la Ley Núm. 127, *supra,* a los efectos de que no será nulo un contrato válido que no haya sido registrado o remitido a la Oficina del Contralor, no tiene el efecto de alterar la política pública que permea la normativa en torno a la contratación municipal, ni exime del cumplimiento con los requisitos antes descritos a los fines de hacer exigibles acuerdos que no son legalmente válidos. Es más, la referida disposición parte de la premisa de que se perfeccionó un contrato y de que éste es válido. En virtud que, en el caso de autos, la relación entre el señor Cordero Vélez y el Municipio nunca alcanzó la obligatoriedad de un pacto bilateral, resolvemos que al no haber contrato, no procedía ordenar el cumplimiento de ninguna formalidad, contrario a lo resuelto por el Tribunal de Apelaciones.

No obstante lo anterior, lo que aquí resolvemos no implica en lo absoluto que endosamos la forma en que actuó el Municipio. Por el contrario, desalentamos

firmemente la práctica de incumplir con los procedimientos establecidos en la Ley de Municipios Autónomos, *supra,* para la adjudicación de subastas y otorgamiento de contratos municipales. Aún así, en vista del interés que representan los fondos públicos, no estamos dispuestos a imponerle al Municipio la responsabilidad de cumplir con un contrato que nunca se perfeccionó. Después de todo, la adecuada fiscalización de la utilización del dinero del erario resulta de vital importancia para mantener la confianza del ciudadano en el gobierno y una democracia saludable. *RBR Construction, S.E. v. A.C.,* *supra.*

Por los fundamentos antes expuestos, revocamos la Sentencia del Tribunal de Apelaciones en todos sus extremos y, por consiguiente, la del Tribunal de Primera Instancia. A su vez, desestimamos la demanda instada por el señor Cordero Vélez toda vez que la relación contractual alegada es inexistente conforme a la normativa sobre contratación municipal.

Se dictará Sentencia de conformidad.


                                        FEDERICO HERNÁNDEZ DENTON
                                             Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Edward Cordero Vélez

    Recurrido

       v.                  AC-2005-76

Municipio de Guánica;
Hon. Martín Vargas Morales,
Alcalde; Junta de Subastas,
Municipio de Guánica

    Peticionarios


SENTENCIA


San Juan, Puerto Rico, a 12 de febrero de 2007.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Sentencia del Tribunal de Apelaciones en todos sus extremos y, por consiguiente, la del Tribunal de Primera Instancia. A su vez, desestimamos la demanda instada por el señor Cordero Vélez toda vez que la relación contractual alegada es inexistente conforme a la normativa sobre contratación municipal.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


                Aida Ileana Oquendo Graulau
              Secretaria del Tribunal Supremo