EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Félix Colón Colón<br><br>    Recurrido<br><br>        v.<br><br>Municipio de Arecibo<br><br>    Peticionario | Certiorari<br><br>2007 TSPR 61<br><br>170 DPR ____ |

Número del Caso: CC-2005-994


Fecha: 28 de marzo de 2007


Tribunal de Apelaciones:

            Región Judicial de Arecibo-Panel VII


Juez Ponente:

            Hon. Guillermo Arbona Lago


Abogados de la Parte Peticionaria:

            Lcda. Sheila Torres Delgado
            Lcda. Rosa Campos Silva
            Lcdo. Simone Cataldi Malpica


Abogada de la Parte Recurrida:

            Lcda. Amarilys González Alayón


Materia: Cobro de Dinero



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Félix Colón Colón

    Recurrido

        v.                          CC-2005-994

Municipio de Arecibo

    Peticionario

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 28 de marzo de 2007

Corresponde determinar en esta ocasión si es válido y vinculante un acuerdo no escrito convenido entre un funcionario municipal y un contratista para prestar servicios al municipio, o si por el contrario, el mismo carece de toda eficacia por no haberse reducido a escrito. Resolvemos, a la luz de la discusión que procede, que dicho arreglo verbal no vinculó a las partes precisamente, por no haberse reducido a escrito el acuerdo por ser ello de carácter constitutivo para la eficacia de las obligaciones contraídas.

**I**

El señor Félix Colón Colón ("Sr. Colón") es dueño

del "Garaje Colón Colón," localizado en el Municipio de Morovis, Puerto Rico. El Garaje se especializa en la reparación de maquinaria y equipo pesado con motores "diesel." En al año 2000, el señor Edgardo Rivera ("Sr. Rivera"), Director de Obras Públicas del Municipio de Arecibo ("el Municipio"), le propuso al Sr. Colón que prestara a crédito servicios de reparación de equipo pesado "diesel" para los vehículos propiedad del Municipio.

El Sr. Colón aceptó verbalmente la oferta realizada por el funcionario municipal. Posteriormente, el Municipio comenzó a entregarle al Sr. Colón su maquinaria y equipo pesado. El Sr. Colón reparaba el equipo del Municipio financiando la adquisición de piezas y repuestos, luego lo devolvía a satisfacción del Municipio y éste procesaba el pago por los servicios prestados. Cabe señalar que el acuerdo verbal entre el Sr. Colón y el Director de Obras Públicas Municipal nunca se redujo a un contrato escrito por lo que tampoco se registró en la Oficina del Contralor de Puerto Rico.

En el año 2002, el Municipio solicitó al Sr. Colón la devolución del equipo pendiente de reparación que éste tenía en su taller, informándole que la relación contractual entre ambos no se había formalizado legalmente. El Sr. Colón no accedió a la solicitud del Municipio hasta tanto éste le pagara los servicios de reparación que había realizado. En respuesta a lo anterior, el Municipio presentó una demanda de *injuction* contra el Sr. Colón ante

el Tribunal de Primera Instancia, Sala Superior de Arecibo, solicitando la devolución de su propiedad. Luego de varios incidentes procesales, el Sr. Colón acordó devolver el equipo del Municipio y hacer las gestiones judiciales y extrajudiciales pertinentes para el cobro de los servicios de reparación prestados y no pagados.

Así las cosas, el Sr. Colón, su esposa, señora Carmen M. Martínez Marrero y la sociedad de gananciales compuesta por ambos, presentaron una demanda en cobro de dinero contra el Municipio, alegando que éste le adeudaba $220,974.15 en concepto de reparaciones al equipo pesado propiedad del Municipio y compra de piezas. El Municipio contestó el recurso negando las alegaciones. Adujo, que la entrega y recibo del equipo pesado municipal se realizó ilegalmente ya que lo pactado no constaba en un contrato escrito. Más aún, alegó que el Sr. Colón no era un neófito en su negocio, por lo que sabía que los servicios que prestó no podían realizarse sin que existieran órdenes de compra y certificaciones que evidenciara que existía una relación contractual legalmente formalizada entre las partes.

Luego de varios incidentes procesales, el Municipio solicitó que se dictara sentencia sumaria contra el Sr. Colón. Sostuvo que el alegado contrato entre el Sr. Colón y el Municipio era nulo ya que no fue plasmado por escrito, ni registrado en la Oficina del Contralor conforme la Ley Núm. 18 de 30 de octubre de 1975 ("Ley Núm. 18"), según

enmendada, 2 L.P.R.A. sec. 97, y la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4354.

El Sr. Colón se opuso oportunamente a la solicitud del Municipio alegando que la Ley Núm. 18, fue enmendada por la Ley Núm. 127 de 31 de mayo de 2004 ("Ley Núm. 127"), con el propósito de establecer que el hecho de no registrar un contrato en la Oficina del Contralor no será causa para decretar su nulidad. En la alternativa, invocó la doctrina de enriquecimiento injusto para recobrar del Municipio lo adeudado.

El Tribunal de Primera Instancia dictó sentencia sumaria desestimando la demanda en cobro de dinero presentada por el Sr. Colón y su esposa. Dicho foro concluyó que no se había cumplido con la Ley Núm. 18. Inconformes, los demandantes apelaron la determinación anterior ante el Tribunal de Apelaciones alegando que el foro de instancia desestimó su demanda sin considerar los efectos de la Ley Núm. 127 sobre la Ley Núm. 18. Además, alegaron que no procedía desestimar el recurso mediante el mecanismo de sentencia sumaria ya que existían controversias de hechos y de derecho.[1]

---

[1] En el recurso de apelación presentado ante el Tribunal de Apelaciones, el Sr. Colón argumentó que "no procedía desestimar la demanda por el fundamento de derecho expuesto en la sentencia [del T.P.I.] y en la solicitud de sentencia sumaria que radicó el Municipio, **pues los contratos aunque no fueron formalizados ni notificados a la Oficina del Contralor, había amplia evidencia documental de la existencia de una relación contractual que benefició al**

El tribunal apelativo revocó el dictamen del Tribunal de Primera Instancia. Concluyó que el hecho de que el contrato no constara por escrito ni que estuviese inscrito en la Oficina del Contralor, no viciaba de nulidad la relación contractual entre las partes, pues se trataba de un defecto subsanable. Fundamentó esta determinación en lo dispuesto en la Ley Núm. 127. Más aún, determinó que no procedía decretar sentencia sumaria ya que existían controversias de hechos que tenían que dilucidarse en un juicio en su fondo. Razonó que el tribunal de instancia tenía que recibir y aquilatar prueba para determinar si entre el Sr. Colón y el Municipio, se formalizó o no un contrato de servicios. Entendió que era necesario determinar cuáles eran los términos del contrato, si alguno, para que se procediera entonces a transcribirlo y registrarlo conforme derecho.

Oportunamente, el Municipio solicitó sin éxito reconsideración de la determinación del tribunal apelativo. En desacuerdo, el Municipio acudió ante nosotros señalando la comisión de los siguientes errores:

> Erró el Honorable Tribunal de Apelaciones al revocar la sentencia del tribunal de instancia en consideración a las disposiciones de la Ley Núm. 127, antes citada.
>
> Erró el Honorable Tribunal de Apelaciones al concluir que, "el hecho que el contrato no conste por escrito [. . .] per se no lo anula."
>
> Erró el Honorable Tribunal de Apelaciones al obviar la normativa de *Fernández & Gutiérrez v.*

**Municipio. . . ."** Apéndice al recurso de *certiorari*, pág. 79. (Énfasis suplido.)

*Municipio de San Juan*, 147 D.P.R. 824 (1999) y crear una obligación jurídica del Municipio de Arecibo a base de la actuación de un funcionario municipal sin facultad para ello.

Erró el Honorable Tribunal de Apelaciones al concluir que existe controversia de hechos que impide resolver el caso de marras por la vía sumaria.

Expedimos. Estando en posición de resolver, procedemos a así hacerlo sin contar con el beneficio de la comparecencia de la parte recurrida, quien no compareció.

**II**

Consistentemente hemos reiterado que "la buena administración de un gobierno es una virtud de democracia, y parte de su buena administración implica llevar a cabo sus funciones como comprador con eficacia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa." *Lugo Ortiz v. Municipio de Guayama*, res. 29 de octubre de 2004, 162 D.P.R. ___, 2004 T.S.P.R. 166. *Véase además Cordero Vélez v. Municipio de Guánica*, res. 12 de febrero de 2007, 170 D.P.R. ___, 2007 TSPR 24; *Ríos v. Municipio de Isabela*, res. 15 de julio de 2003, 159 D.P.R. ___, 2003 T.S.P.R. 122. Los estatutos que regulan y ordenan la realización de obras y adquisición de bienes y servicios para el Estado, sus agencias e instrumentalidades y los municipios, tienen como propósito la protección de los intereses y recursos fiscales del pueblo contra el dispendio, la prevaricación, el favoritismo y los riesgos del incumplimiento. *Lugo Ortiz*

*v. Municipio de Guayama*, *supra*; *Cancel v. Mun. de San Juan*, 101 D.P.R. 296, 300 (1973).

La facultad de los municipios de desembolsar fondos públicos para el pago de las obligaciones que contraen, está supeditada a que estas entidades públicas actúen acorde con los procedimientos establecidos por ley y nuestra jurisprudencia interpretativa. Conforme lo anterior, reiteradamente nos hemos expresado a favor de una norma restrictiva en cuanto a los contratos suscritos entre entes privados y los municipios. *Cordero Vélez v. Municipio de Guánica*, *supra*; *Lugo Ortiz v. Municipio de Guayama*, *supra*. Cabe señalar, que cuando se trata de contratos municipales regidos especialmente por la Ley de Municipios Autónomos, la validez de los mismos tiene que determinarse considerando las disposiciones pertinentes de este estatuto especial, y no a la luz de la teoría general de obligaciones y contratos del Código Civil. *Cordero Vélez v. Municipio de Guánica*, *supra*; *Mun. de Ponce v. A.C. et al.*, 153 D.P.R. 1 (2000).

De conformidad con la normativa anteriormente discutida, y considerando los estatutos que regulan la contratación municipal,[2] hemos establecido que para que los

---

[2] Específicamente hacemos referencia al artículo 8.016 de la Ley de Municipios Autónomos, según enmendada, 21 L.P.R.A. sec. 4366, que establece que

> [l]os municipios mantendrán un registro de todos los contratos que otorguen, incluyendo la enmiendas a los mismos y enviarán copia de éstos y de las escrituras de adquisición y disposición de bienes a la Oficina del Contralor de Puerto

contratos otorgados por un municipio sean válidos y por lo tanto tengan efecto vinculante entre las partes, tienen que cumplirse varios requisitos formales como procesales. Así, en primer lugar, "es **indispensable** que el contrato conste por escrito para que lo convenido tenga efecto vinculante." *Cordero Vélez v. Municipio de Guánica*, *supra*; *Municipio de Mayagüez v. Edgardo Lebrón h/n/c Lebrón & Associates*, res. 21 de abril de 2006, 167 D.P.R. ___, 2006 T.S.P.R. 70. Este requisito tiene que cumplirse **sin excepción alguna** para que lo acordado tenga validez entre las partes. *Ríos v. Municipio de Isabela*, *supra*; *Fernández & Gutierrez v. Mun. de San Juan*, 147 D.P.R. 824, 830-833 (1999); *Hatton v. Mun. de Ponce*, 134 D.P.R. 1001 (1994).

El requisito de contrato escrito es uno de carácter formal o sustantivo. Constituye un mecanismo profiláctico tendiente a evitar pagos y reclamaciones fraudulentas e ilegales. El contrato escrito es la mejor evidencia de las obligaciones recíprocas que contraen las partes. Libra a las partes de futuras controversias espúreas sobre los

---

Rico, conforme las secs. 97 et seq. del Título 2 y su Reglamento.

Además, es de aplicación a la contratación municipal el artículo 1 de la Ley Núm. 18 de 30 de octubre de 1975, según enmendada, 2 L.P.R.A. sec. 97, que establece lo siguiente:

> . . . las entidades municipales del Estado Libre Asociado de Puerto Rico, sin excepción alguna, mantendrán un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha de otorgamiento del contrato o la enmienda.

términos acordados originalmente pues éstos quedan plasmados, de forma objetiva, en el acuerdo escrito. Por lo tanto, este requerimiento protege los derechos tanto del municipio como del contratista, en caso de incumplimiento.

Adviértase además, que previo a suscribir un contrato el municipio tiene que haber identificado los fondos de dónde se van a pagar los servicios o bienes que se adquieren. El contrato escrito es lo que permite determinar con certeza el monto del desembolso para a su vez, identificar la partida correspondiente del presupuesto municipal contra la cual se van a hacer tales desembolsos. 21 L.P.R.A. sec. 4354 (b). *Véase además*, *Hatton v. Municipio de Ponce, supra; Morales v. Municipio de Toa Baja,* 119 D.P.R. 682 (1987). En consecuencia, este requerimiento prudencial tiene una insoslayable dimensión sustantiva de sana administración pública. **Necesariamente entonces, la exigencia de que todo contrato municipal sea por escrito tiene un carácter constitutivo respecto la eficacia de las obligaciones contraídas**. *Véase*, Oficina del Contralor, *Principios Legales y de Sana Administración que Regulan la contratación de Servicios Profesionales y Consultivos en el Sector Público*, julio 2006.

De otra parte, hemos reconocido que conforme el artículo 8.016 de la Ley de Municipios Autónomos y el artículo 1 de la Ley Núm. 18, los municipios deben mantener un registro fiel de los contratos que suscriben y remitir copia de los mismos a la Oficina del Contralor dentro de

los quince (15) días siguientes a su otorgamiento. *Cordero Vélez v. Municipio de Guánica*, *supra*; *Lugo Ortiz v. Municipio de Guyama*, *supra*; *Ríos v. Municipio de Isabela*, *supra*. Estos requisitos promueven una sana y transparente administración pública, ya que sirven como **mecanismos de cotejo y publicidad de los contratos otorgados por los municipios.**

En el pasado habíamos dispuesto que el incumplimiento con los requisitos de registro y de remisión al Contralor de un contrato municipal, viciaba de nulidad el contrato suscrito. Véase entre otros, *Fernández & Gutierrez v. Mun. de San Juan, supra,* pág. 833; *Ríos v. Mun. de Isabela, supra*; *Las Marías Reference Laboratory Corp. v. Mun. de San Juan*, res. 15 de julio de 2003, 159 D.P.R. ___, 2003 TSPR 121. Así las cosas, la Asamblea Legislativa aprobó la Ley Núm. 127 para aclarar que dicho incumplimiento, sin más, no acarreaba la nulidad de los contratos, sino que prohibía el desembolso de fondos públicos o que se requirieran servicios hasta tanto se registraran los mismos conforme dispone la ley y la reglamentación aplicable.[3] Es decir, la

---

[3] Específicamente la Ley Núm. 127 de 31 de mayo de 2004, enmendó la Ley Núm. 18 para añadir a la misma el siguiente inciso:

> (d) El incumplimiento con lo dispuesto en esta sección o con la disposición equivalente relacionada a registros de contratos incluidos en la sec. 4366 del Título 21, parte de la ley conocida como "Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico," de por sí **no será causa para que un tribunal competente declare la nulidad de cualquier contrato o negocio jurídico legalmente válido.** No obstante,

Asamblea Legislativa dispuso que el requisito de tramitación, a saber: registro y remisión a la Oficina del Contralor de un contrato municipal, puede ser subsanado. Sólo si ello no ocurre, presumiblemente, cabría hablar de la anulación del contrato.

En *Lugo Ortiz v. Guayama*, *supra*, nos enfrentamos por primera vez a lo dispuesto por la Ley Núm. 127, y reconocimos que dicha ley tenía "el efecto de variar de forma radical la normativa desarrollada por este Tribunal en torno a los contratos municipales." En virtud de la misma, **"los tribunales no podrán decretar la nulidad de un contrato municipal por el solo hecho que éste no haya sido registrado ni remitido a la Oficina del Contralor."** *Id.* (Énfasis en original.)

Ello no obstante, dejamos claro que la referida enmienda **no tuvo el efecto de alterar la política pública en torno a la contratación municipal.** La sana y recta administración pública exige del gobierno que al actuar como adquirente de bienes o servicios, procure siempre "la mayor eficiencia a los fines de proteger los intereses y dineros del pueblo." *Id.* Después de todo, el Estado tiene la obligación de evitar con actos afirmativos, la corrupción, el dispendio y la prevaricación en la administración de los fondos públicos. Así, y conforme el

_____

ninguna prestación o contraprestación objeto de un contrato podrá exigirse hasta tanto se haya dado cumplimiento a lo dispuesto en esta sección.

2 L.P.R.A. sec. 97(d). (Énfasis suplido.)

alto interés público involucrado, no hay cabida en estos casos para los remedios en equidad. *Las Marías Reference Laboratory Corp. v. Municipio de San Juan*, *supra*.

Es por ello que las partes privadas deben ejercer un rol más activo al contratar con un municipio, pues éstas no están exentas de cumplir con las leyes aplicables. *Cordero Vélez v. Municipio de Guánica*, *supra*; *Lugo Ortiz v. Municipio de Guayama*, *supra*. Así, "aquella parte privada que se cruce de brazos y preste servicios sin exigir prueba fehaciente de que el gobierno cumplió con su deber, se arriesga a asumir la responsabilidad por sus pérdidas." *Lugo Ortiz v. Municipio de Guayama*, *supra*.

## III

Habiendo expuesto y discutido la normativa aplicable al caso de autos, pasamos a resolver la controversia ante nuestra consideración.

El Sr. Colón prestó servicios de reparación de maquinaria y equipo pesado al Municipio de Arecibo luego que el Sr. Rivera, Director de Obras Públicas del Municipio, le solicitara estos servicios. El acuerdo entre éstos **nunca se consignó por escrito por lo que tampoco pudo ser registrado en los libros del Municipio ni mucho menos remitirse copia del mismo a la Oficina del Contralor de Puerto Rico**. El Tribunal de Primera Instancia desestimó sumariamente la demanda en cobro de dinero presentada por el Sr. Colón, concluyendo que no se había cumplido con el

requisito de registro y remisión de copia del contrato a la Oficina del Contralor.

El Tribunal de Apelaciones, sin embargo, revocó el dictamen anterior al concluir que el hecho de que el contrato no constara por escrito y no se hubiese remitido copia del mismo a la Oficina del Contralor, "per se, no lo anulaba," ya que lo anterior era un defecto subsanable. El tribunal estimó que, en virtud de lo dispuesto en la Ley Núm. 127, el incumplimiento con el requisito de contrato escrito no era causa para que un tribunal decretase su nulidad. No tiene razón.

Como se indicó previamente, la Ley Núm. 127 enmendó la Ley Núm. 18 para establecer que la no remisión de copia de un contrato municipal ante la Oficina del Contralor o la falta de registro del mismo en los libros del municipio, no viciaba de nulidad el contrato suscrito. Ello no comporta, como concluye el foro apelativo intermedio, que el mismo principio aplique cuando de lo que se trata es de un acuerdo que nunca se redujo a escrito. Somos del criterio que la Ley Núm. 127 no contempló este escenario.

Existe una marcada diferencia entre unos requisitos y otros. La exigencia de que un contrato suscrito se anote en la bitácora municipal y su copia se remita a la Oficina del Contralor va encaminada a ofrecerle publicidad, frente a terceros, a la contratación municipal. De esta forma los terceros pueden fiscalizar la misma. Más sin embargo, exigir que los contratos suscritos se reduzcan a escrito

tiene una insoslayable dimensión de sana administración pública en la medida que permite salvaguardar los intereses de las partes contratantes frente a un incumplimiento, permite la ordenada utilización de los fondos municipales, evita la incertidumbre en la confección del presupuesto municipal y hace posible la adecuada identificación de la partida contra la cual se harán los desembolsos públicos en cumplimiento con la ley. Es decir, los primeros son mas que nada de carácter procesal y de ordenada tramitación. Más el último, es sustantivo por su directa relación con la sana administración pública. En atención a lo cual, debemos concluir que el incumplimiento con el requisito de reducir a escrito el contrato municipal necesariamente afecta adversamente la eficacia de las obligaciones contraídas.

Así pues, aun cuando en nuestra jurisdicción se admite la contratación verbal como perfectamente vinculante, cuando se trata de un contrato suscrito por un municipio que involucra el desembolso de fondos públicos la norma general debe dejarse a un lado. Una sana administración pública así lo exige.

Ya anteriormente nos habíamos expresado bajo estos términos, antes y después de la aprobación de la Ley Núm. 117. *E.g.,* *Hatton v. Municipio de Ponce, supra; Ríos v. Municipio de Isabela, supra; Municipio de Mayagüez v. Edgardo Lebrón, supra*. Somos del criterio que la Ley Núm. 117 no pretendió avalar la contratación verbal de los

municipios.  De hecho, en la Exposición de Motivos de la ley se indicó que su propósito era "mantener y apoyar un sistema donde se protejan los intereses de las partes contratantes", y ciertamente, la mejor forma de lograr ese objetivo es asegurándose que los términos y condiciones del contrato consten con claridad para lo que es indispensable que el contrato se recoja a escrito.  No se puede dejar en manos del mejor recuerdo del funcionario municipal o de un contratista la determinación de qué fue lo que se quiso pactar.

Es importante recalcar, como lo hemos hecho en el pasado, que el contratista municipal debe ser más diligente en su relación con el municipio.  Así, el Sr. Colón debió prestar mayor presteza a este asunto, tomando medidas afirmativas para cerciorarse que el acuerdo verbal al que llegó con el señor Rivera se redujera a un contrato escrito, antes de comenzar a ofrecer sus servicios.  No puede ahora evadir las consecuencias de la inobservancia de las normas que regulan la contratación municipal.  Dicho de otra forma, el Sr. Colón se arriesgó y asumió la responsabilidad por sus pérdidas.

Finalmente, por no haber controversia sobre la inexistencia de un contrato válido entre las partes que vinculara al Municipio, procedía dictar sentencia sumaria, como cuestión de derecho, desestimando la reclamación en cobro de dinero presentada por el Sr. Colón.  Del expediente se desprende que era un hecho no controvertido

que las partes habían acordado la prestación de los servicios de forma verbal y que lo pactado nunca se redujo a contrato escrito. Habida cuenta de lo anterior y toda vez que la Ley Núm. 127 no se refiere a situaciones en que el acuerdo entre un municipio y un ente privado no se recoge por escrito, como en el presente caso, nada impedía que el Tribunal de Primera Instancia dictara sentencia sumariamente. Véase, *Freire Ayala v. Vista Rent to Own, Inc.*, res. 9 de noviembre de 2006, 169 D.P.R. ___, 2006 T.S.P.R. 162; *Vera Morales v. Bravo Colón*, res. 27 de febrero de 2004, 161 D.P.R. ___, 2004 T.S.P.R. 30.

**IV**

Por los fundamentos expuestos anteriormente, procede dictar sentencia revocando la sentencia dictada por el Tribunal de Apelaciones y desestimar la demanda en cobro de dinero presentada por el Sr. Colón ya que entre éste y el Municipio de Arecibo no existía una relación contractual conforme derecho.

Se dictará sentencia de conformidad.


Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Félix Colón Colón

    Recurrido

       v.

Municipio de Arecibo

    Peticionario

CC-2005-994


SENTENCIA

San Juan, Puerto Rico, a 28 de marzo de 2007

Por los fundamentos expresados en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se dicta sentencia revocando la sentencia dictada por el Tribunal de Apelaciones y se desestima la demanda en cobro de dinero presentada por el Sr. Colón ya que entre éste y el Municipio de Arecibo no existía una relación contractual conforme derecho.

Así los pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió una Opinión de conformidad. El Juez Presidente señor Hernández Denton hace constar lo siguiente:

"El Juez Presidente señor Hernández Denton concurre por entender que a la luz de la normativa establecida recientemente en *Cordero Vélez v. Municipio de Guánica,* 2007 TSPR 24, para que lo convenido tenga efecto vinculante es indispensable que el contrato suscrito por un municipio con un suplidor conste por escrito".

El Juez Asociado señor Rivera Pérez no intervino.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Félix Colón Colón

    Recurrido

     Vs.                       CC-2005-994    Certiorari

Municipio de Arecibo

    Peticionario

Opinión de Conformidad emitida por el Juez Asociado señor Fuster Berlingeri.

San Juan, Puerto Rico, a 28 de marzo de 2007.

Estoy conforme con la Opinión del Tribunal en el caso de autos.

No obstante, creo menester emitir esta breve Opinión para puntualizar que ya antes habíamos resuelto específicamente que el requisito formal de **reducir a contrato escrito** los acuerdos con municipios **"tiene carácter constitutivo con respecto a la eficacia de éstos"**. Lo indicamos literalmente así en Fernández y Gutiérrez v. Mun. de San Juan, 147 D.P.R. 824 (1999), precisamente en la pág. 830. Allí citamos nuestros pronunciamientos previos sobre el particular en Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37, 54 (1988), en el cual pautamos por primera vez el requisito formal en cuestión e indicamos que

éste debía observarse rigurosamente. Reiteramos en Fernández y Gutiérrez v. Mun. de San Juan, *supra*, lo decidido antes en Ocasio v. Alcalde Mun. de Maunabo, *supra*, y ampliamos nuestro dictamen en éste para precisar que el requisito formal aludido tenía carácter constitutivo.

Se trata pues de una norma claramente establecida de este Foro, que la Asamblea Legislativa no ha alterado mediante la Ley Núm. 127 de 31 de mayo de 2004, como bien se explica en la Opinión mayoritaria.


                              Jaime B. Fuster Berlingeri
                                   Juez Asociado